299 So.2d 317

**B. F. MOSELEY, alias**

v.

**STATE.**

**I Div. 456.**

Court of Criminal Appeals of Alabama.

May 21, 1974.

Rehearing Denied July 18, 1974.

Donald E. Brutkiewicz, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:

"The Grand Jury of said County charge, that, before the finding of this indictment B. F. Moseley alias Freddie Moseley, whose name is to the Grand Jury otherwise unknown than as stated, did with intent to defraud, falsely pretend to Reita Cantin that he was F. Murphy, and, by means of such false pretense, attempted to obtain from said Reita Cantin paregoric, containing morphine—N—oxide, against the peace and dignity of the State of Alabama."

When appellant was called before the bar to plead to the indictment, he was determined to be indigent and counsel was appointed to represent him and he entered a plea of not guilty. After a thorough investigation of the facts his counsel advised him, as a matter of trial strategy, that he might fare better to waive a jury trial and let the court try his case. Appellant agreed to waive a jury trial. When this fact was made known in open court, the judge went to great pains in explaining to him the rights he was giving up by the waiver and following an extensive interrogation the court found that appellant fully understood his rights and that he knowingly, intentionally and intelligently waived his right to trial by a jury.

The facts are not complicated. On April 4, 1973, Mr. Robert Earl Pelzer, a pharmacist at Eckerd's Drugstore Number Seventy located at 2727 Pleasant Valley Road, Mobile, Alabama, received a telephone call from a man who represented himself to be Dr. Frank Skinner, a well-known physician in Mobile, stating that he wanted to order four ounces of paregoric for Frank Murphy. Mr. Pelzer wrote the order on a prescription blank but he never filled it. He knew Dr. Skinner's voice as they usually had several telephone conversations everyday. He knew the caller was not Dr. Skinner. When the caller hung up, Mr. Pelzer called Dr. Skinner and told him he had just received a telephone call from a man purporting to be Dr. Skinner and that he had ordered four ounces of paregoric for one Frank Murphy and had eagerly offered to give him Dr. Skinner's BNDD number. A BNDD number is assigned to every physician, or other professional person authorized to prescribe drugs under the Alabama Uniform Controlled Substances Act. Every drugstore with which a doctor does business has on file his BNDD number.

Frank Murphy was not a patient of Dr. Skinner's and the doctor had never heard of him. After receiving Mr. Pelzer's call, Dr. Skinner called the local police and related the incident. A short time later a man walked into the drugstore and asked a clerk for a prescription for Mr. Murphy and sat on a chair while waiting for the package. Mr. Pelzer came to him and asked him if he was the young man who came to pick up Murphy's prescription and he said he was. At this time, the police officers arrived and took the man in custody. The paregoric was never delivered.

A warrant was issued and appellant was arrested. He was given the *Miranda* rights and warnings and told the arresting officer that he understood his rights.

Appellant testified in his behalf. He admitted going in the drugstore and asking for a prescription for a Mr. Murphy. He explained the occasion for so doing by saying he was on the outside of the drugstore waiting for his brother to pick him up and carry him home; that a man he did not know was parked nearby in an old station wagon and this man requested him to go inside and pick up a prescription for a Mr. Murphy. This man gave him two dollars and some change. When the man handed him the money he observed crutches in the car and concluded the man was crippled.

He said he went to get the prescription as a humanitarian act and nothing more; that while inside the officers took him outside and asked him what he was doing and he told them. He said the officers carried him home and five days later returned with a warrant and arrested him. He denied that he was the caller for the paregoric and denied that he impersonated Dr. Skinner. He denied that he was guilty of any wrong doing, but he finds himself ensnared in the tangled web of the law because he served the role of the good Samaritan all to his great hurt and injury— the injury being five years in the penitentiary.

At the conclusion of the state's case, and also after the defense rested, appellant moved to exclude the evidence mainly on the ground the state failed to prove that paregoric contained morphine—N—oxide and claimed this constituted a fatal variance.

As we have pointed out, the paregoric was never delivered to appellant. He never had possession of the drug and, of course, he could not have been charged with possession. He was charged with *attempting* to obtain paregoric by fraud and false pretense.

In Broadhead v. State, 24 Ala.App. 576, 139 So. 115, the court said:

"An attempt to commit a crime consists of three elements: (1) The intent to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. In other words, in order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime, but which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended."

Paregoric contains opium. Morphine is the principal alkaloid of opium. Morphine —N—oxide is a derivative of opium and is one of the controlled substances listed in Title 22, Section 258(29)(c)(16).

The penalty provision under which appellant was convicted is found in Title 22, Section 258(47)A.

 Where the testimony was taken ore tenus, the court's finding is treated like the verdict of a jury, and will not be disturbed on appeal unless plainly contrary to the weight of the evidence. Peterson v. State, 17 Ala.App. 662, 88 So. 49.

There was ample evidence to support the judgment of conviction, and the sentence was within the limits prescribed by law. From what we have said there was no error in denying the motion to exclude the evidence.

The case is due to be affirmed and it is so ordered.

Affirmed.

All the Judges concur.