329 So.2d 627
**Don BENNETT**

**v.**

**STATE.**

**6 Div. 855.**

Court of Criminal Appeals of Alabama.

March 30, 1976.

Ralph E. Coleman, Birmingham, for appellant.

William J. Baxley, Atty. Gen. and Randolph P. Reaves, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

The sole question presented by this appeal is whether the trial court, trying the case without a jury by agreement of both parties, was justified in adjudging defendant guilty of an assault and battery. Defendant had appealed from a conviction in the Criminal Court of Jefferson County, to the Circuit Court, where there was a trial de novo.

Defendant was a bus driver for Birmingham Transit Authority, whose route included streets adjacent to the grounds of the University of Alabama in Birmingham. A sixteen-year-old girl, who was attending the Center for Developmental Learning Disorders at the University of Alabama in Birmingham Medical Center, had seen him several times while he was driving the bus in that area and had waved at him. Defendant was thirty-five years of age. On May 14, 1974, defendant was off work and drove his automobile by the place where he had seen the girl waving at him. He offered her a ride home. She got into his automobile. He put his hand on her shoulder and pulled her "towards him . . . A little bit." According to the girl, "He kissed me a lot of times." He drove on the freeway, then on the Green Springs Highway to the Dairy Queen, where he kissed her "before he went out." and put his hands on her. He kissed her there "for a pretty good bit. And then he got out to go buy a Coke." After getting the Coke, they went back on the highway, and he drove the girl to her home on the Green Springs Highway, up on the hill. He told her not to tell her mother and daddy. She was not crying any of this time, but when she arrived home she cried. On cross-examination, upon being asked whether she slid over to his side, she responded, "I sort of slid over a little bit."

The girl's mother testified that the girl had been at the special school for retarded children five or six years; that the year of the incident was the second year that she had been riding a bus by herself; that when she came home on May 14, "She was very hysterical, crying . . . I asked her what was wrong, and she told me what happened . . . She was so hysterical that I had to calm her down a long time before I could understand her."

Defendant's testimony was in many respects substantially the same as that of the girl, that he had noticed her waving at him when he was driving the bus, that he saw her standing waiting for a bus on the occasion involved, that he asked her if she wished to ride home and she got in the car with him. He said he then asked her if she would like to have a Coke and she said it would be all right. She told him where she lived and he headed in that direction by the route of the Interstate and Green Springs Highway. He then asked her where would be a good place to go and she suggested the Dairy Queen. They stopped at a traffic light. His version continues:

**570**

"Q  What if anything happened?

"A  I asked her if I could kiss her, and she said she didn't care. So, I did. She was sitting by me at this time.

"Q  You say sitting by you, how close?

"A  Right next to me.

"Q  All right. Did you pull her, or did do anything to cause her to come over there?

"A  I had asked her, and she had moved over. That was all.

"Q  After you had asked her and she moved over, you asked her if you could kiss her and she said okay?

"A  Yes.

"Q  Did you kiss her?

"A  Yes.

"Q  What did you do?

"A  Went on to the Dairy Queen.

"Q  All right. What did you do there?

"A  I asked her——well, I started to go get a coke. And I asked her could I kiss her again, and she said she didn't care. So, I kissed her again. And then I went and got the Coke."

He further testified that as he approached her home, she told him "that her mother was going to be mad at her. So, I says, well, if your mother is going to be mad and you will get in trouble, don't tell her." As she left, he said, "I kissed her bye." He further testified:

"Q  Did she say anything about meeting again?

"A  I asked her if she would like for me to pick her up the next Tuesday, and she said it would be okay with her. But I got put in jail on Monday. So I didn't go back Tuesday.

"Q  On this particular case?

"A  That's right."

Appellant divides the sole question before us into two parts:

"1.  Did the conduct of the defendant in this instance, toward prosecuting witness, amount to an Assault and Battery?

"2.  Did the Court err in concluding that she was held against her will, and 'a mental harm' was done because of her age, and condition [TR 30] and that because of her age and retarded condition, she could not give her consent and that a reasonable person should have known this."

We agree that the two questions deserve separate consideration, although to some extent they blend.

Bedrock principles of the law of assault and battery in Alabama are to be found in the pronouncements of the Supreme Court in *Tarver v. State,* 43 Ala. 354 (1869) and *Jacobi v. State,* 133 Ala. 1, 32 So. 158, appeal dismissed 187 U.S. 133, 23 S.Ct. 48, 47 L.Ed. 106 (1902). In *Tarver* it was stated:

"An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect."

and in *Jacobi* it was said:

"We do not feel any argument or suggestion is necessary to sustain the proposition of the second charge: 'Any touching by one person of the person of another in rudeness or in anger is an assault and battery, and every assault and battery includes an assault.'"

In *Turner v. State,* 41 Ala.App. 310, 131, So.2d 428, Judge Cates, now Presiding Judge Cates, said persuasively and in accord with other authorities that "indecency" is within the meaning of "rudeness."

■ The law is settled in Alabama that if a man takes improper liberties with the person of a female, or indecently fondles her without her consent, he is guilty of an assault and battery. *Walker v. State,* 132 Ala. 11, 31 So. 557; *Moore v. State,* 33 Ala.App. 188, 31 So.2d 373.

In arguing that the evidence is not sufficient to warrant a finding of an assault and battery, appellant stresses what was said in *McGee v. State,* 4 Ala.App. 54, 58 So. 1008, in pertinent part as follows:

"In other words, except in the instances to which we hereafter refer, in all *criminal* prosecutions for an assault or an assault and battery, the law looks to the *intent* with which the act was done. Where there existed, at the time of an alleged battery, no intent to do personal injury, then there was no *crime* unless the act was done under circumstances hereinafter referred to. *Tarver v. State,* 43 Ala. 354; *Lane v. State,* 85 Ala. 11, 4 So. 730; Wharton's Am.Crim. Law (4th and Rev. Ed.) § 1341.

"In *civil, as distinguished* from *criminal,* actions, *an intent to injure* is not *essential* to the liability of the person committing the assault. *Carlton v. Henry,* 129 Ala. 479, 29 So. 924."

Without questioning in the least what was said in *McGee* as applied to the facts of that case, a case involving an alleged assault with intent to murder with a gun, we quote from authorities as to the kind of intent that is necessary to constitute an intent that is an element of the crime of assault or assault and battery. In Burdick, *Law of Crime* (1946), Section 113, it is stated:

"Much misunderstanding has undoubtedly arisen by confusing the objective of this mental element of intent. It is not necessarily an intent to break the law, although such an intent is often present, because one may be entirely ignorant that the act he is doing is a violation of law, nevertheless his ignorance of the law is not excuse. It is not necessarily an intent to do anything wrong, or even immoral, but an intent to do the act."

In discussing the nature of the requisite intent, it is stated in *Henderson, Wharton's Criminal Law and Procedure,* Section 338:

". . . It is likewise immaterial that he did not intend to harm anyone. Hence a blow inflicted as a joke, there being no assent, is a battery . . . It is sufficient that the defendant voluntarily intended to commit the unlawful act of touching . . ."

In addition to the confusion that can arise from the use and attemped application of the term "intend" or "intent," we should note the confusion that can arise from an assertion that one must intend an "injury" or "harm" in order to be guilty of a particular offense. An "injury" or "harm" to a person is referable at times to actual damage to the structure of the human body, while at times the term is referable to the invasion of one's right to the inviolability of the body. "A criminal battery is committed whenever one person intentionally and wrongfully inflicts personal injury upon another against his will, by violence. Actual injury is not a necessary element of an unlawful battery." *Scott v. State,* 118 Ala. 115, 24 So. 414.

■ The facts reported in *Walker v. State, supra,* are sufficient to demonstrate that an actual injury, in the sense of some damage to the structure of the body, is not an essential element of an assault and battery, criminal or civil. In that case, defendant, a friend of the victim and her husband, came to their house and, after playing with their baby, defendant reached across the lady's lap "and pinched her knee with all his fingers."

■ The valid consent of a female to kissing, or other such intimacy, is, of course, a defense to an action or prosecution based upon such intimacy. In a civil case, the

consent must be specially pleaded. In a criminal case, it can be shown as a complete defense under the plea of not guilty. The evidence as to consent is strongly, if not conclusively, in favor of defendant, but the validity of the consent is highly questionable.

It is not for us to pass upon the validity of express consent of a young girl to being kissed by a middle-aged man under myriad circumstances. The problem in this case is large enough, and we limit our consideration to it alone. A resolution of the question is dependent upon the circumstances of this particular case, including the actual ages of the parties, the mental age of the girl, the previous acquaintance or relation between the two, the particular behavior of each toward the other, the apparent mentality of the girl, and the conformity vel non of their conduct with conventional decorum. As to these questions, we do not occupy the vantage point of the trial judge, whose senses of sight and hearing in looking at and listening to both of the parties as they testified were of paramount value in solving the problem. That he took what he saw, as well as what he heard, into mature consideration, is reflected in the record by the statement of the court, after taking the case under advisement overnight, as follows:

> "Now, to continue that, it seems to me the question in this case is whether a reasonable person had a right to assume that this retarded child of sixteen years of age could give her consent. And after observing the child and her demeanor, this Court firmly believes that this retarded child could not give her consent."

 In a case tried without a jury and in which the judgment of the trial court is based upon oral testimony, a conviction must be affirmed unless the judgment below was clearly wrong or so contrary to the weight of the evidence as to be manifestly unjust. *Moseley v. State,* 53 Ala.App. 272, 299 So.2d 317, cert. denied 292 Ala. 743, 299 So.2d 319; *Haney v. State,* 33 Ala.

App. 524, 36 So.2d 116, cert. denied, 250 Ala. 664, 36 So.2d 117.

 That the trial court deemed that there were some mitigating circumstances and that there was a reasonable doubt, at least, that defendant had intentionally committed a heinous offense, is indicated by its action in suspending the six months sentence and placing the defendant on probation. An assault and battery does not involve moral turpitude. *Bedsole v. State,* 274 Ala. 603, 150 So.2d 696.

 Finding no error on the part of the trial court, we conclude that its judgment should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

AFFIRMED.

All the Judges concur.