389 So.2d 170 (1980)
William David CORDIAL
v.
STATE.
6 Div. 853.
Court of Criminal Appeals of Alabama.
August 19, 1980.
Rehearing Denied October 7, 1980.
*171 Dan M. Gibson, Tuscaloosa, for appellant.
Charles A. Graddick, Atty. Gen., Joseph G. L. Marston, III, Asst. Atty. Gen., for appellee.
BOWEN, Judge.
The defendant was indicted and convicted for robbery. Sentence was eighteen years' imprisonment.
The only issue raised on appeal is whether the trial judge erred in refusing to instruct the jury on the lesser offenses of assault and battery, assault with intent to rob and larceny included within the crime of robbery.
A trial court must instruct the jury on the lesser offenses included in the indictment "when there is a reasonable theory from the evidence supporting his (accused's) position." Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978).
"A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury."
Chavers, 361 So.2d at 1107.
However, in a robbery prosecution, a refusal to charge on the lesser included offenses of larceny and assault and battery is not error where the evidence does not warrant verdicts for such offenses. Kelly v. State, 235 Ala. 5, 176 So. 807 (1937). See also Henderson v. State, 373 So.2d 1218 (Ala.Cr.App.) cert. denied, Ex parte Henderson, 373 So.2d 1221 (Ala.1979); Golston v. State, 57 Ala.App. 623, 330 So.2d 446 (1975); Chamberlain v. State, 48 Ala.App. 254, 263 So.2d 709 (1972); Harri's v. State, 44 Ala.App. 654, 219 So.2d 410 (1969); Bowman v. State, 44 Ala.App. 331, 208 So.2d 241 (1968); Brooks v. State, 36 Ala.App. 310, 55 So.2d 366 (1952).
The facts in this case are not disputed. On February 28, 1978, the defendant and two other men returned to Big Daddy's Lounge in Tuscaloosa around 9:00 in the *172 evening. All three were armed with firearms. The defendant had a double-barreled shotgun. The three men claimed that they had lost a wallet containing their rent money in the lounge and thought that someone had taken it.
Frankie Stamps, the bartender, testified that the defendant told everyone to "get up against the wall" and that the defendant held his gun on them. The defendant said, "We come for the wallet" and "We mean business; we have got nothing to lose." Ms. Stamps stated that, when the customers convinced the three armed men that they did not have the wallet, one of the men, Barry Niepokny, demanded the money out of the cash register and the money she had in her pocket. During this time the defendant said nothing: "All he was doing was standing there holding a gun on him [them]." The defendant was pointing his weapon at the customers. As the three men started to leave the lounge the defendant "said not to follow them, that they had somebody waiting outside, not to call the police." Ms. Stamps stated that she never heard the defendant say, "We don't want the money out of the cash register; we just came for the wallet."
David Hassell was a customer in Big Daddy's Lounge on the night of the robbery. He heard the defendant say, "Everybody up against the wall; this is a holdup." The defendant and one of his accomplices said this three or four times. Hassell testified that the defendant said, "We have lost a hundred dollars, and it was in a billfold." The three men said that they knew that "they had lost it in there, and they knew who had gotten it, and they wanted their money because they had to pay their rent." Hassell testified that the defendant said that he had done time before and that he did not mind doing it again.
According to Hassell, Ms. Stamps said, "If I give you a hundred dollars out of the cash register, will you go on and not hurt anybody." Initially the defendant responded, "No, I know that those three have got my money, and I want them to up it." The armed men "hemhawed" and finally the defendant said, "Okay just give me the money out of the cash register." Ms. Stamps then got the money out of the cash register and one of the defendant's companions said, "Just go ahead and give me all of it." As they were leaving the defendant said, "Now, you all remember that I know all of you. You all keep your mouths shut or we will get you", and "You know me, and if I ever hear anything of this, I will get you; we will get you."
Hassell stated that the defendant waved the shotgun but never pointed it at anyone. He testified that after a customer asked if a girl who had a "bad heart" could sit down in a chair Ms. Stamps volunteered to go to the cash register. As she was counting out the money, Niepokny, one of the defendant's companions, told her to "go ahead and give him all the money in the cash register."
The manager of Big Daddy's Lounge testified that, when he checked the cash register after having been notified of the robbery, $313.00 was missing. The defendant was apprehended while fleeing near the scene.
Niepokny took Billy Bigham, an investigator for the Tuscaloosa Police Department, to where the firearms used in the robbery had been hidden in an old deepfreezer behind Niepokny's brother-in-law's house. Niepokny cooperated with the police and made a statement also. He told them that they went back to get a wallet which was what they wanted.
The State then rested its case.
Mary Plowman testified for the defense. She was a customer in Big Daddy's during the robbery. She testified that the first thing the defendant said was that "somebody had stolen their billfold, and they wanted it back." To her date the defendant said, "Wayne, you know I ain't got nothing to lose; I mean business." She did not hear the defendant say this is a holdup. Ms. Plowman was on the telephone when the defendant entered the lounge carrying a shotgun.
*173 Ms. Plowman testified that Ms. Stamps said "that if money was what they wanted, she would give them their money out of the register if they wouldn't hurt anybody." According to Ms. Plowman the defendant replied that "that was not the money they wanted; they wanted their money, their billfold." The defendant said this once or twice. The defendant did nothing to stop Niepokny from taking the money from Ms. Stamps-the money from the cash register and the money that she had in her pocket.
In determining whether the jury should have been instructed on lesser included offenses, the specific question in this case is whether the evidence according to any reasonable theory presented a controversy as to whether the defendant's particular conduct constituted robbery or a lesser included offense. Chavers.
The defendant argues that a reasonable theory is that he and Niepokny entered into a plan to return to Big Daddy's Lounge not to commit a robbery, but rather to seek the return of their lost billfold. The argument continues:
"When an impasse was apparent, the bartender suggested the cash register. There was evidence that Niepokny demanded the money from the register while Cordial (the defendant) remained passive. The purpose of the plan then changed from the return of their own money to the taking of someone else's. Again, the evidence of Cordial's role remains controversial. This jury could have determined that it was Niepokny, in an independent act, who perpetrated the robbery."
The defense is grounded upon the rule that
"a person cannot be guilty of robbery in forcibly taking property from the person or presence of another if he does so under a bona fide belief that he is the owner of such property or is entitled to the possession thereof, since such belief negatives the requisite animus furandi or intent to steal."
67 Am.Jur.2d, Robbery § 17 (1973).
In Alabama it has been held that to constitute robbery it is necessary that the property taken be that of some other person than him who takes it, but it is not necessary that it be the property of the person from whom it is taken. Bowman v. State, 44 Ala.App. 331, 208 So.2d 241 (1968); Douglas v. State, 21 Ala.App. 289, 107 So. 791 (1926). See also Annot. 88 A.L.R.3d 1309 (1978).
Under an indictment for robbery, there may be a conviction for assault with intent to rob, for larceny, for attempt to rob, for assault and battery or for assault. Rambo v. State, 134 Ala. 71, 32 So. 650 (1902). The defendant by three separate written instructions requested the trial court to charge the jury that an indictment for robbery also embraces the charges of assault and battery, assault with intent to rob and larceny.
Here the evidence would not support a charge of assault and battery. Generally see McArdle v. State, 373 So.2d 897 (Ala.Cr. App.) cert. denied, Ex parte State ex rel. Atty. Gen., 372 So.2d 902 (Ala.1979); Stoutmire v. State, 358 So.2d 508 (Ala.Cr.App. 1978). There is no evidence that the defendant touched anyone or that he invaded another's "right to the inviolability of the body." Bennett v. State, 57 Ala.App. 568, 571, 329 So.2d 627 (1976).
The evidence will not support a charge of larceny for the simple fact that the evidence shows that a robbery was committed. In a robbery prosecution, when under the evidence, if any offense was committed it was robbery, it is not error for the trial court to refuse to charge on larceny or any other lesser included offense. Brooks v. State, 36 Ala.App. 310, 55 So.2d 366 (1951).
For this same reason, there was no evidence to support a charge of assault with intent to rob. There is absolutely no evidence to show or indicate that the defendant assaulted Ms. Stamps with the intent to rob.
If, as the defendant argues, the jury could have reasonably determined that it was Niepokny who perpetrated the robbery *174 in an independent act beyond the scope of the original conspiracy, then, if such be the case, the defendant could not have been convicted of robbery or any offense included in robbery as charged in the indictment. In other words, unless the defendant was found to be an accomplice in the robbery of Ms. Stamps, he could not be convicted of robbery or any lesser included offense. If this robbery of Ms. Stamps was a separate and independent crime committed by Niepokny, the defendant can hardly be guilty of any crime arising out of Niepokny's actions. No doubt the defendant committed criminal acts when he entered the lounge, armed with a shotgun and forcibly seeking the return of his money. However, these crimes were not lesser included offenses of the crime of the robbery of Ms. Stamps.
"While it is not necessary to make a specific charge of all the offenses included in the charge for which the indictment is drawn, nevertheless a conviction cannot be had of a crime as included in the offense specifically charged unless the indictment in describing the major offense contains all the essential averments of the lesser, or the greater offense necessarily includes all the essential ingredients of the lesser."
42 C.J.S. Indictments and Information § 275 (1944).
Under the facts of this case and legal principles involved, it was not error for the trial judge to refuse the defendant's requested instructions on the lesser included offenses of the robbery charged in the indictment. We have searched the record for error and have found none. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.

ON REHEARING
BOWEN, Judge.
On application for rehearing it is argued that under the evidence the jury could have found the defendant guilty of threatening the use of a dangerous weapon (Alabama Code 1975, Section 13-1-45) as a lesser included offense under an indictment for robbery.
"No proposition is more familiar than that a man cannot be indicted for an offense, and under that indictment suffer a conviction of an offense not named in the indictment." Garner v. State, 3 Ala.App. 161, 162, 57 So. 502 (1912). A violation of a statute proscribing the drawing of a deadly weapon upon another is not included in a charge of robbery as a lesser included offense. Decker v. State, 251 Ark. 28, 471 S.W.2d 343 (1971).
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.