JOINER, Judge.
Nathan Shelly appeals the summary denial of his petition for a writ of habeas corpus .challenging the calculation of his sentence by the Alabama Department of Corrections (“the Department”). For the reasons set forth below, we reverse.
In January 2009, Shelly was sentenced to 10 years’ imprisonment on a manslaughter conviction and placed in the custody of the Department. (C. 12.) As the Department recognized in its pleadings below, under § 14-9-41, Ala.Code 1975 (“the Act”), Shelly is generally “entitled to earn a deduction from the term of his sentence” because he is serving a term of imprisonment of 15 years or less, and because he has not been convicted of a Class A felony or a criminal sex offense involving a child. Prior to March 9, 2012, Shelly was classified as a “Class I prisoner” and earning a deduction — commonly referred to as “good time” — of 75 days for every 30 days he served. (C. 12.) See § 14-9-41(a)(l), Ala. Code 1975. Effective March 9, 2012, however, the Department determined — based on a 1997 opinion of the Alabama Attorney General interpreting the good-time statute — that inmates convicted of manslaughter could be considered only “Class II prisoners” and, thus, could earn good time at a rate of no more than 40 days for every 30 days served. (Department’s brief, pp. 5-6.) “Consequently, [those] inmates’ good time balances and minimum release dates were recalculated by the Department Central Records Division.” (Department’s brief, p. 6.) As a result of the Department’s determination, Shelly’s rate of earning good time was changed, his earned-good-time balance dropped, and his minimum-release date changed from April 2, 2012, to June 13, 2013. (C. 12-13.)
In May 2012, Shelly filed in the Limestone County Circuit Court a petition for a writ of habeas corpus. (C. 7.) In his petition, Shelly argued that he had been deprived of his earned good time without due process and that the Department was incorrectly interpreting the good-time statute. (C. 8-10.) In response, the Department asserted that its newly implemented interpretation of the good-time statute was correct and consistent with the 1997 attorney general opinion; the Department also argued that Shelly had not been unlawfully deprived of his earned good time because, the Department argued, Shelly could hold no interest in deductions to which he was not lawfully entitled. The circuit court agreed with the Department and summarily dismissed Shelly’s petition.
On appeal, Shelly argues, among other things, that
“[the Department] fail[ed] to demonstrate[] before the [circuit] court how Shelly was prohibited from earning good time credit in Class I earning status, how he was not entitled to the good time credit he had accumulated in Class I earning status, and how manslaughter is a violent attack which would constitute an assault.”
*1147 (Shelly’s brief, p. 13.) The Department argues, however, that “[t]he trial court correctly held that inmates convicted of manslaughter are ineligible to receive good time in Class I earning status and ... that [the] attorney general opinion ... is a correct interpretation of the [good-time statute].” (Department’s brief, p. 9.) As the Department acknowledges in its brief, “[a]t issue in this case is the interpretation of a single sentence in the [good-time statute].” (Department’s brief, p. 9.)
The issue before this Court is whether the Act prohibits prisoners like Shelly— who were convicted of manslaughter and sentenced to not more than 15 years— from being classified as a “Class I prisoner” for the purposes of earning good time. We hold that it does not.
This Court generally reviews the denial of a habeas petition under an abuse-of-discretion standard. Miller v. State, 668 So.2d 912, 917 (Ala.Crim.App.1995). See also Montgomery v. State, 967 So.2d 103 (Ala.Crim.App.2007); Ward v. State, 929 So.2d 1048 (Ala.Crim.App.2005). However,
“[b]ecause the issue presented here involves a review of the circuit court’s conclusion of law and its application of the law to undisputed facts, this Court applies a de novo standard of review. Further, the interpretation of a statute presents a question of law and, thus, mandates de novo review.”
Johnson v. State, 89 So.3d 205, 206 (Ala.Crim.App.2011) (citations omitted).
As a threshold matter, we note that
“ ‘ “[t]he touchstone of legislative construction is to ascertain and effectuate the intent of the legislature as expressed in the statute.” Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala.1982) (emphasis added). This Court gives effect to the intent of the legislature as expressed in the plain, unambiguous language of the statute. Jefferson County Comm’n v. Edwards, 32 So.3d 572, 586 (Ala.2009).’
“Ex parte Catlin, 72 So.3d 606, 607-08 (Ala.2011) (Cobb, C.J., concurring specially).
“ ‘It is a well established principle of statutory interpretation that “[w]here the meaning of the plain language of the statute is clear, it must be construed according to its plain language.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). “Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).
[[Image here]]
“Crawford v. State, 100 So.3d 610, 614 (Ala.Crim.App.2011).”
J.D.I. v. State, 77 So.3d 610, 616 (Ala.Crim.App.2011). In sum, this Court must determine whether the language of § 14-9-41, Ala.Code 1975, is plain or ambiguous. If the language of the statute is plain, this Court must apply the plain language to mean exactly what it says.
The relevant portions of § 14-9-41, Ala. Code 1975, states:
“(a) Each prisoner who shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be *1148 specified by this article may be entitled to earn a deduction from the term of his sentence as follows:
“(1) Seventy-five days for each 30 days actually served while the prisoner is classified as a Class I prisoner.
[[Image here]]
“(e) Provided, however, no person may receive the benefits of correctional incentive time if he or she has been convicted of a Class A felony or has been sentenced to life, or death, or who has received a sentence for more than 15 years in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may receive the benefits of correctional incentive time if he or she has been convicted of a criminal sex offense involving a child as defined in Section 15-20-21(5). No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.”
(Emphasis added.)
It is undisputed that the only question is whether the above-underlined “assault” provision prohibits prisoners like Shelly — who were convicted of manslaughter and received a sentence of 15 years or less — from being classified as a “Class I prisoner” for the purpose of earning good time. In deciding in May 2012 that a prisoner convicted of manslaughter could not be classified as a Class I prisoner for the purpose of earning good time, the Department relied on a 1997 opinion from the attorney general. In the 1997 opinion, the Office of the Attorney General addressed whether the Department may “classify a defendant convicted of manslaughter as a Class I prisoner for the purposes of computing correctional incentive time under [§ 14-9-41, Ala.Code 1975].” (C. 23.) The attorney general concluded that a defendant convicted of manslaughter could not lawfully be classified as a Class I prisoner for the purpose of earning good time. (C. 25.) The analysis underpinning this conclusion is, in total, as follows:
“Any person convicted of manslaughter has caused the death of another person and, therefore, has committed an assault resulting in the permanent loss or use of the victim’s bodily organs or appendages. A person convicted of manslaughter is not eligible for classification as a Class I prisoner for the purposes of § 14-9-41.”
(C. 25.)
Although the 1997 attorney general’s opinion may constitute persuasive authority, it is advisory in nature, and this Court is not obligated to follow it. See State Dep’t of Revenue v. Arnold, 909 So.2d 192, 194 (Ala.2005) (noting that “such opinions are not controlling, but merely advisory”); State v. Corley, 831 So.2d 59, 61 (Ala.Crim.App.2001) (“We recognize that ‘[w]hile an opinion of the attorney general is not binding, it can constitute persuasive authority.’ ” (quoting Alabama-Tennessee Natural Gas Co. v. Southern Natural Gas Co., 694 So.2d 1344, 1346 (Ala.1997))); Cantrell v. Walker Builders, Inc., 678 So.2d 169, 173 (Ala.Civ.App.1996) (“Opinions of the attorney general are advisory in nature, and we are not obligated to follow them.”).
The Department contends on appeal that the term “assault” as used in § 14-9-41, Ala.Code 1975, “does not particularly reference ... any of the felonies specifically denominated as ‘assault’ in the Alabama Criminal Code” and that “the phrase ‘an assault’ is a generic reference to any crimi *1149 nal offense in the nature of an assault.” (Department’s brief, p. 10.) The Department also argues that “the notion of ‘an assault’ including manslaughter is not contrary to the plain language of [the Act].” (Department’s brief, p. 11.) We disagree with these contentions for two reasons.
First, the Act speaks to individuals “convicted of an assault,” § 14-9-41(e), Ala.Code 1975. The legislature could have, but did not, use the word “offense” or “crime”; instead, it used the word “assault.”
“We must ... bear in mind that ‘ “[t]here is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ ”
State v. Adams, 91 So.3d 724, 736 (Ala.Crim.App.2010) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997), quoting in turn 82 C.J.S. Statutes § 316, at pp. 551-52 (1953)). In Alabama, an “assault” is generally a crime in which one person causes physical injury to another. §§ 13A-6-20, 13A-6-21, and 13A-6-22, Ala.Code 1975. Manslaughter, unlike assault, is a crime in which one person causes the death of another. § 13A-6-3, Ala.Code 1975. Although the Department contends that manslaughter deflnitionally constitutes a violent assault, Alabama law makes a distinction between those crimes that result in injury, however great — assault — and those crimes that result in death — murder, manslaughter, and criminally negligent homicide. Accordingly, the plain reading of § 14-9-41 (e), Ala.Code 1975, does not support reading “convicted of an assault” to encompass a defendant convicted of manslaughter.
Second, “convicted of an assault” as referenced in § 14-9-41 (e) does not stand alone; even if this Court were to agree with the Department that the phrase “convicted of an assault” in § 14-9-41(e) encompassed a manslaughter conviction, such a conclusion would be insufficient to support a finding that the “assault” provision of § 14-9-41(e) applies to manslaughter. Instead, reading the statute as a whole, the question is whether manslaughter is an assault “where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage.” § 14-9-41(e), Ala. Code 1975. The Department contends that “[i]t is axiomatic ... that manslaughter constitutes a violent assault which permanently deprives the victim of the use of his or her body, including all its organs and appendages.” (Department’s brief, p. 12.)
The Department’s argument, however, is not supported by the language of the Act; specifically, the Department’s interpretation necessarily inserts into the Act a word that is not used — death. This Court is required to give meaning and effect to the language used in the statute, and the language in § 14-9-41(e) speaks to injury, not death. This conclusion is bolstered by the resemblance of the assault provision to § 13A-6-20(a)(2), Ala.Code 1975, which recognizes that first-degree assault is committed if “[w]ith intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such an injury to any person.”
In support of its interpretation of § 14-9-41 (e), the Department relies on Hasty v. State, 615 So.2d 1323 (Ala.Crim.App.1993). In that case, Hasty was convicted of second-degree rape and did not earn good-time deductions as a Class I prisoner; Hasty filed a petition for a writ of habeas corpus and argued that he was “being unjustly denied Class I good time deduc *1150 tions.” 615 So.2d at 1323. In Hasty, this Court addressed the following language from an earlier version § 14-9-41(e): “No person shall be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.” 615 So.2d at 1323. With regard to this provision of § 14-9-41 (e), this Court held:
“Clearly, the legislature was using the generic term ‘sexual abuse’ and did not intend to deny Class I benefits only to those offenders convicted of the offenses of sexual abuse in the first and second degree while awarding Class I benefits to those offenders convicted of the more serious offenses of rape and sodomy. Obviously, the legislature’s use of the words ‘perpetration of sexual abuse’ was intended to include any sexual offense committed against a person under 17 years of age.”
Hasty, 615 So.2d at 1323.
Relying on Hasty, the Department argues that, like that portion of former § 14-9-41 (e) that references “sexual abuse,” the phráse “an assault” is a “generic term.” (Department’s brief, p. 10.) We disagree.
We agree with the Department that the phrase interpreted by this Court in Hasty spoke to general type of crime. Although the provision discussed in Hasty referenced “sexual abuse,” it did not reference the specific crime of “sexual abuse”; instead, “ ‘the legislature’s use of the words “perpetration of sexual abuse” [in § 14-9-41(e) ] was intended to include any sexual offense committed against a person under the age of 17 years of age.’ ” D.L.S. v. State, 675 So.2d 1363, 1364 (Ala.Crim.App.1995) (quoting Hasty, supra). As this Court noted in D.L.S., “[o]bviously, the legislative intent of § 14-9-41(e) is to protect children from sexual predators.” 675 So.2d at 1364.
The language of § 14-9-41 (e) being construed in Hasty speaks to an inmate “convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.” Hasty, 615 So.2d at 1323. In this provision, the legislature first broadly identified an inmate “convicted of a crime” and then modified that broad identification with the phrase “involving the perpetration of sexual abuse...."
As explained above, the language in the assault provision of the Act is not as broad. In the assault provision of § 14-9-41(e), the legislature did not broadly identify an inmate convicted of a “crime” or “offense,” but instead, first identified an inmate convicted of the specific crime of assault; from this specific identification, the legislature then narrowed that assault conviction to those “where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage.” § 14-9-41 (e), Ala. Code 1975.
Moreover, the protections in the sexual-abuse provision of § 14 — 9-41 (e) and the protections envisioned by the assault provision are simply different; the sexual-abuse provision was designed to broadly protect children from all manner of child-sex offenders, while the assault provision is narrowly designed to protect a small subset of assault victims. As noted above, the assault provision resembles one portion of the first-degree assault statute, and it is clear that the assault provision applies only to a small set of assault convictions. Accordingly, it is not simply a generic assault, but an assault resulting in very specific injuries to a victim. For these reasons, the assault provision of § 14-9-41(e), Ala.Code 1975, is not analogous to the child-sex-offender provision construed in Hasty.
*1151 The dissent contends that “assault,” as used in § 14-9-41 (e), Ala.Code 1975, encompasses manslaughter, and states that “[t]he conclusion that the legislature intended for § 14-9-41(e), Ala.Code 1975, to prohibit inmates convicted of manslaughter from receiving Class I good-time credit is buttressed by the fact that assault is a lesser-included offense of manslaughter.” 109 So.3d at 1155 (Windom, P.J., dissenting). In support of the idea that a assault is a lesser-included offense of manslaughter, the dissent relies on Coleman v. State, 344 So.2d 1249, 1250 (Ala.Crim.App.1977), and Beason v. State, 5 Ala.App. 103, 105, 59 So. 712, 712 (1912).
In Coleman, a case involving the “possession of prohibited narcotics,” this Court stated that the “[c]harge of murder includes assault with intent to murder.” 344 So.2d at 1250. Notably, however, this statement is supported by Thomas v. State, 125 Ala. 45, 27 So. 920 (1900), and Letcher v. State, 145 Ala. 669, 39 So. 922 (1906), two cases discussing “assault with intent to murder” as a lesser-included offense of murder. These cases, however, were decided well before the effective date of the current Alabama criminal code, and “assault with intent to murder” is no longer a recognized offense in Alabama. For all that appears, “assault with intent to murder” would now be characterized as attempted murder. See generally Langley v. State, 381 So.2d 223, 224 (Ala.Crim.App.1980) (“[T]o constitute an assault with intent to murder there must be both intent to kill and malice, that an assault with intent to murder is an assault with the intent to take life, under circumstances which if successful would constitute murder, either in the first degree or in the second degree.”).
In Beason, an individual charged with manslaughter was convicted of “assault and battery.” 5 Ala.App. at 104, 59 So. at 712. The Beason court concluded that “[i]t is manifest that the offense of an assault and battery upon the person of the wife by the defendant by stamping her with his foot or feet is included in this charge of manslaughter.” 5 Ala.App. at 105, 59 So. at 712. As with Thomas and Letcher, the 1912 Beason decision involves a lesser-included offense that no longer exists, specifically, assault and battery; at the time Beason was decided, the crime of assault was not defined as it is now. See generally Bennett v. State, 57 Ala.App. 568, 570, 329 So.2d 627, 629 (Ala.Crim.App.1976) (“ ‘An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect.’ ” (quoting Tarver v. State, 43 Ala. 354 (1869))).
The dissent provides no caselaw interpreting current Alabama law to support the proposition that assault is a lesser-included offense of manslaughter and to now so hold would change Alabama law. The dissent quotes C.P. v. State, 597 So.2d 246, 247 (Ala.Crim.App.1992), for the proposition that “it would be impossible to commit [manslaughter] without committing [assault].” (Brackets in dissent.) This Court in C.P.—a case involving an individual indicted for attempted third-degree burglary but found guilty of criminal mischief — actually stated that “it would be impossible to commit a greater offense without committing the included offense.” 597 So.2d at 246 (emphasis added). The sweeping statement by the dissent that assault is a lesser-included offense of manslaughter fails to recognize that the two crimes have differing elements and varying mens rea. Compare § 13A-6-3(a)(l), *1152 Ala.Code 1975 (“A person commits the crime of manslaughter if: [h]e recklessly causes the death of another person....”), with § 13A-6-20(a)(l), Ala.Code 1975 (“A person commits the crime of assault in the first degree if: [w]ith intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument .... ”). Without deciding a question that is not before us, it is clear that the broad assertion in the dissent that an assault is a lesser-included offense of manslaughter is legally untenable. See generally § 18A-1-9(a)(1), Ala. Code 1975 (“An offense is an included one if: [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged.... ”).
In the end, the Department seeks to have this Court equate assault with manslaughter and injury with death; § 14-9-41(e), Ala.Code 1975, however, does not support such an interpretation.[1]
Finally, the Department argues that “if this Court were to construe ‘an assault’ to not include manslaughter, the result of that decision would be both absurd and contrary to public policy.” (Department’s brief, p. 12.) Specifically, the Department contends that such an interpretation “would impose a harsher outcome on an inmate who maims his victim versus one who takes his victim’s very life.” (Department’s brief, p. 12.) We disagree for two reasons.
First, our holding applies only to those individuals who, like Shelly, are convicted of manslaughter and who receive a sentence of 15 years’ imprisonment or less. The dissent contends that our conclusions lead “ ‘to [the] absurd and unjust result’ of prohibiting Class I good-time credit for inmates convicted of an assault that resulted in serious injury but allowing that same credit for inmates convicted of an assault that resulted in death, i.e., manslaughter.” 109 So.3d at 1155 (Windom, P.J., dissenting). As noted above, however, assault is not generally a lesser-included offense of manslaughter and, further, each crime encompasses varying elements and mens rea. The legislature could have reasonably concluded that individuals whose reckless conduct resulted in death may be treated differently than individuals whose intentional actions resulted in “the permanent loss or use or permanent partial loss or use of any bodily organ or appendage.” § 14-9-41(e), Ala.Code 1975. This conclusion is bolstered by the fact that the legislature’s decision to draw a distinction based on the length of the sentence imposed. The legislature could have reasonably concluded that a prisoner who receives a longer sentence and meets the other requirements to be classified as a Class I prisoner for the purpose of earning incentive good time may be treated differently than a prisoner who has a shorter sentence and meets those same qualifications. Although we might not deem the classifications drawn by the legislature in § 14-9-41(e), Ala.Code 1975, as the most *1153 reasonable or efficient, we cannot say they are unreasonable or absurd.
“It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is,' not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.”
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998).
Second, the result about which the Department now complains already exists. Specifically, § 14-9-41 (e) does not prohibit those individuals convicted of criminally negligent homicide, see § 18A-6-4(c), Ala. Code 1975, or homicide by vehicle or vessel, see § 82-5A-192, Ala.Code 1975, from being classified as a Class I prisoner for the purposes of good-time deductions; these individuals, like those convicted of manslaughter, have taken the lives of their victims. Likewise, those individuals convicted of an assault who have been sentenced to 15 years’ imprisonment or less are eligible to be classified as a Class I prisoner for the purpose of earning good-time deductions so long as the assault did not result in the “permanent loss or use or permanent partial loss or use of any bodily organ or appendage.” § 14-9-41 (e), Ala. Code 1975. Therefore, this argument is without merit.
The judgment of the circuit court is reversed, and this matter is remanded to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, and BURKE, JJ., concur. WINDOM, P.J., dissents, with writing.

. The dissent characterizes our reading of the word "assault” in § 14-9-41(e), Ala.Code 1975, as "literal.” 109 So.3d at 1155 ("To interpret the term ‘assault’ literally and exclude manslaughter from the prohibition of Class I good-time credit in § 14-9-41(e), Ala. Code 1975, leads ‘to [a] absurd and unjust result’ ....”) (Windom, P.J., dissenting). This statement appears to concede that our interpretation of the word "assault” is consistent with the plain language of the statute. See DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998) ("Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” (quotations omitted)).