WELCH, Judge.[1]
The State of Alabama appeals pursuant to Rule 15.7, Ala. R.Crim. P., from the trial court’s pretrial dismissal of the 5 felony counts of a 10-count indictment against Nancy Lillian Worley, the former Alabama Secretary of State.[2]
In March 2007, a Montgomery County grand jury returned a 10-count indictment against Worley; the charges were related to a letter Worley had mailed to 5 of her employees during the 2006 Democratic primary campaign. For each employee who received a letter, the State filed two charges against Worley; one count charged Worley with a felony violation of § 17 — 1—7(b), Ala.Code 1975, and one count charged Worley with a misdemeanor violation of § 17 — 1—7(c), Ala.Code 1975.[3] Counts 1, 3, 5, 7, and 9 of the indictment were felony charges, and they alleged:
“The Grand Jury of said County charge that, before the finding of this Indictment, Nancy Lillian Worley, alias Nancy Worley, whose name is otherwise unknown to the Grand Jury, did attempt to use her official authority or position, to-wit: the Secretary of State for the State of Alabama, for the purpose of influencing the vote or political action of any person, to-wit: [name of letter recipient], by soliciting: financial contributions, placement of a bumper sticker on a vehicle, ‘door-to-door’ activities, ‘telephone bank’ activities, ‘letter writing’ activities, ‘fundraising’ activities, the obtaining of a ‘yard sign,’ and/or the providing of ‘clerical’ assistance, in violation of Section 17-1-7(b) [now § 17-17-4] of *411 the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 5-7.)
Counts 2, 4, 6, 8, and 10 of the indictment were misdemeanor charges, and they alleged:
“The Grand Jury of said County further charge that, before the finding of this Indictment, Nancy Lillian Worley, alias Nancy Worley, whose name is otherwise unknown to the Grand Jury, an officer or employee of the State of Alabama, to-wit: the Secretary of State for the State of Alabama, did solicit a political campaign contribution from another employee, to wit: [name of letter recipient], who worked for the said Nancy Lillian Worley in a subordinate capacity, in violation of Section 17-l-7(e) [now § 17-17-5] of the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 5-7.)
Worley sent the following letter to the five employees named in the indictment: “Dear [name of employee],
“Working together, we have been able to achieve MANY successes in the Secretary of State’s Office over the past three years. We have also faced several challenges, yet our office is stronger today, more productive, more service-oriented, and more respected than ever before! THANK YOU!
‘You have probably heard by the state government ‘grapevine’ that I am running for re-election, but I want to ask for your support and your vote in the June 6, 2006, Democratic Primary Election. In 2003, when I entered the Secretary of State’s Office, I requested that we not discriminate against anyone because of his/her politics, race, religion, social status, etc. Thus, if you choose to support another candidate, you have every right to make that decision without any problems from me.
“I am enclosing an envelope on which you may volunteer, request a yard sign, etc.; however, you may also choose to destroy this envelope. You will be given the same professional respect you have previously been given if you choose the latter.
“I will be honored if you will attach the enclosed bumper sticker to your vehicle’s bumper or rear window. If you need additional bumper stickers, please call my home/campaign number ... and leave a message.
“Thank you again for your hard work to make the Secretary of State’s Office one of the best in state government — in Alabama and throughout the nation. “Sincerely yours,
“/s/ Nancy L. Worley
“Nancy L. Worley”
(C. 74.) (Emphasis in original.) The mailing also included a campaign bumper sticker and a pledge envelope offering opportunities to support the campaign with financial contributions and participation in such activities such as fund-raising, letter writing, and working the telephone bank.
On July 6, 2007, Worley filed a motion to dismiss all the charges against her. The State filed a written response to the motion to dismiss on July 11, 2007. The trial court held hearings on the motion to dismiss on July 9 and July 11, 2007, and the parties presented arguments at both hearings. At the July 11 hearing, the trial court stated that it was dismissing the five felony charges and that it would enter a written order. On July 16, 2007, the trial court issued a written order dismissing the five felony charges. (C. 82-86.) The trial court stated in the order that because § 17 — 1—7(c) specifically addressed campaign practices involving subordinates, the more general felony statute — § 17-1- *412 7(b) — did not control. The trial court also concluded that the State had overreached by attempting to charge misdemeanor offenses as felony offenses. The trial court also stated that, “if statutory construction alone does not resolve the confusion as to the spheres of operation for the competing subsections,” it would hold that § 17-1-7(b) was unconstitutionally vague.
On appeal, the State argues that the trial court erred when it dismissed the felony counts against Worley because, it argued, a jury could properly determine that some of Worley’s actions violated the misdemeanor statute, § 17-1-7(c), Ala. Code 1975, and that some of Worley’s actions violated the felony statute, § 17-1-7(b), Ala.Code 1975. The State also argues that the trial court erred when it held, in the alternative, that the felony provision of the statute was unconstitutionally vague. We agree with the State.
I.
The State argues that the trial court erred when it dismissed the felony charges because, it says, “[a] jury could reasonably determine, from the evidence that the State expects to present at trial, that Wor-ley was guilty of both the felony and misdemeanor offenses arising from her actions towards the employees of the Secretary of State’s Office.” (State’s brief, at pp. 18-19.) The State further argues that, although the trial court’s order was couched in terms of statutory construction, the trial court had actually made a pretrial determination that the State’s proposed evidence did not fall within the parameters of the felony statute. Thus, the State continues, the trial court erroneously foreclosed the State from the opportunity to present its evidence to the jury so that the jury could determine whether the State’s evidence established the elements of the felony charges.
A.
Worley argues in her brief to this Court that the State’s claim — that the trial court’s ruling was improper because it was actually a ruling on the sufficiency of the evidence — is not properly before this Court because, Worley says, the State did not present this argument in the trial court. We disagree.
“The critical consideration for the preservation of error for appellate review is that the trial court be sufficiently informed of the basis of the defendant’s argument.” Ex parte Parks, 923 So.2d 330, 333 (Ala.2005). See also Ex parte Abrams, 3 So.3d 819, 822-23 (Ala.2008) (“To hold that Abrams’s argument as to the sufficiency of evidence was not preserved for appellate review because it was not raised as a specific ‘objection’ or because the trial court did not expressly rule on it would be to elevate form over substance.”). It is clear from the record in this case that the trial court was aware of the grounds of the State’s opposition to Worley’s motion to dismiss the indictments — that is, that the evidence the State intended to present at trial would demonstrate that Worley’s actions constituted violations of both the misdemeanor and felony statutes. The State presented this argument in its response to the motion to dismiss and at the hearings the trial court held on the motion to dismiss. Furthermore, a portion of the trial court’s order is based on its conclusion that the State’s evidence could not establish both felony and misdemeanor charges. The substance of the State’s argument on appeal remains the same as the arguments it raised in the trial court. Therefore, the trial court was on notice of the State’s objections to its ruling, and the trial court had the opportunity to correct the error. The trial court was also aware of the grounds of the State’s objection to the trial *413 court’s order dismissing the felony indictments. Therefore, there is no merit to Worley’s claim that the State failed to preserve this issue for appellate review.
Moreover, even a general objection to the dismissal of the felony indictments would have been sufficient to preserve the State’s objections for purposes of appeal in this case. Rule 13.5(c)(1), Ala. R.Crim. P., provides:
“A motion to dismiss the indictment may be based upon objections to the venire, the lack of legal qualifications of an individual grand juror, the legal insufficiency of the indictment, or the failure of an indictment to charge an offense.”
A pretrial determination about the sufficiency or alleged insufficiency of the State’s proposed evidence was not a proper ground to justify the dismissal of the indictments. In State v. Toole, 25 So.3d 486 (Ala.Crim.App.2009), the State made only a general objection to the trial court’s dismissal of the indictment charging Toole with obstructing justice by using a false identity, a violation of § 13A-8-194, Ala. Code 1975. This Court held:
“In the present case, the trial court was clearly aware of the grounds of the State’s objections to the dismissal of the indictment because the grounds were those stated by the trial court. The State was arguing that the indictment should not be dismissed for the reasons given by the trial judge. This is not a situation concerning an objection to the admissibility of evidence ‘where the judge is left to speculate as to the position of a party and the party’s grounds for concern.’ Ex parte Abrams, 3 So.3d [819,] 823 [ (Ala.2008) ]. Moreover the State argues in brief only the issues argued before and, more specifically, by the trial court. See Ex parte Parks, 923 So.2d [330,] 335 [(Ala.2005)] (‘This is the substance of [Parks’s] argument on appeal. We therefore conclude that Parks did preserve his argument for appellate review....’) Cf. Ex parte Coulliette, 857 So.2d 793, 795 (Ala.2003) (‘ “The motion [to suppress] did not give the trial court notice of the specific issues [Coulliette] ... raise[d] in his brief to [the Court of Criminal Appeals]. Therefore, the trial court did not have the opportunity to rectify these alleged errors.... [Coulliette’s] motion was not sufficient to preserve the issues presented by him in his brief.” ’ (quoting Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994))).”
State v. Toole, 25 So.3d at 489-90.
We note, furthermore, that the Court in Toole also stated, “[B]ecause there were no proper grounds to justify the dismissal of this indictment in this case, a general objection to the dismissal was sufficient to preserve this matter.” 25 So.3d at 490. Even if we had determined that the State’s arguments and objections were not sufficiently specific to place the trial court on notice of the grounds for its objections to the dismissal of the indictments, we would nonetheless hold that a general objection to the dismissal was sufficient to preserve the matter for review on appeal on the basis that there were no proper grounds to justify the dismissal of the indictments.
Therefore, we reject Worley’s argument that the State failed to preserve for appellate review any claim regarding the trial court’s dismissal of the indictments based on the sufficiency of the evidence, and we will examine the merits of the State’s argument.
B.
Section 17-l-7(b), Ala.Code 1975,[4] under which Worley was charged in counts 1, 3, *414 5, 7, and 9 of the indictment, then provided:
“No person shall attempt to use his or her official authority or position for the purpose of influencing the vote or political action of any person. Any person who violates this subsection (b) shall be guilty of a felony and punishable by a fine not to exceed ten thousand dollars ($10,000) or imprisonment in the state penitentiary for a period not to exceed two years, or both.”
Section 1Y — 1—7(c),[5] under which Worley was charged in Counts 2, 4, 6, 8, and 10 of the indictment, provided, in relevant part:
“No person in the employment of the State of Alabama, a county, or a city whether classified or unclassified, shall use any state, county, or city funds, property or time, for any political activities. Any person who is in the employment of the State of Alabama, a county, or a city shall be on approved leave to engage in political action or the person shall be on personal time before or after work and on holidays. It shall be unlawful for any officer or employee to solicit any type of political campaign contributions from other employees who work for the officer or employee in a subordinate capacity. It shall also be unlawful for any officer or employee to coerce or attempt to coerce any subordinate employee to work in any capacity in any political campaign or cause. Any person who violates this section shall be guilty of the crime of trading in public office and upon conviction thereof, shall be fined or sentenced, or both, as provided by Section 18A-10-63.”
Worley alleged in the motion to dismiss that the indictment charged the solicitation of a campaign contribution as both a felony and a misdemeanor, and she argued that the State’s construction of § 17-1-7 in that manner violated constitutional principles. She also alleged that because the specific subsection, § 17-1-7(c), addressed the conduct of soliciting contributions as a misdemeanor, there was no reasonable interpretation of the statute that would permit the same conduct to be charged as a felony. Worley also alleged in the motion to dismiss that § 17-1-7 violated constitutional principles because, she argued, it was vague and overbroad. Finally, Worley claimed in the motion to dismiss that the State had violated her constitutional right to equal protection; she alleged that by charging her with a felony violation under § 17-l-7(b), the State was engaging in selective enforcement of the statute based on her political affiliation.
The State argued in its response to Worley’s motion to dismiss and at the hearings held on that motion that, in order to prove the felony counts of the indictment, it expected to prove at trial that Worley, as Alabama’s Secretary of State,[6] *415 attempted to invoke her official authority or position when she sent a mailing with enclosures to five of her employees and that she did so in an attempt to influence the employees’ votes or political actions. The State further argued in response to Worley’s motion to dismiss that it expected to present evidence demonstrating that Worley had obtained the home addresses of some of the employees by virtue of her position as Alabama Secretary of State and that Worley had told employees that she could find out whether they had voted and, if they did vote, for whom they had cast their votes.
In its order dismissing the felony charges, the trial court held that, because § 17-l-7(c) specifically addressed campaign practices toward subordinates and because § 17 — 1—7(b) did not likewise limit its prohibitions to officers or employees, then subsection (b) did not apply to Wor-ley’s actions and the State should not have charged Worley with violating subsection (b) of the statute. The court also held that subsection (c) was a more specific statute while subsection (b) was a more general statute and that the specific statute controlled over the general one. The difficulty with the trial court’s analysis is that it was based almost entirely on the court’s examination of the evidence it understood the State would offer at trial and on its determination that that evidence did not fit within the elements of the felony statute. Thus, the trial court’s dismissal of the felony charges was a pretrial fact-based determination of the evidence the court believed that the State might or might not have presented at trial. That fact-based pretrial determination was made in error.
An indictment is subject to dismissal by the trial court in very limited circumstances; a motion to dismiss “may be based upon objections to the venire, the lack of legal qualifications of an individual grand juror, the legal insufficiency of the indictment, or the failure of the indictment to charge an offense.” Rule 18.5(c)(1), Ala. R.Crim. P. Neither Rule 13.5(c)(1) nor Alabama caselaw permits a trial court to dismiss an indictment based on the court’s pretrial determination of sufficiency of the State’s case. E.g., State v. Robertson, 8 So.3d 356 (Ala.Crim.App.2008).
In Doseck v. State, 8 So.3d 1024 (Ala.Crim.App.2008), this Court addressed circumstances substantially similar to those presented in this case, and we held that the circuit court had correctly denied the defendant’s motion seeking pretrial dismissal of a felony charge. Doseck was convicted, pursuant to a guilty plea, of second-degree escape, a violation of § 13A-10-32, Ala.Code 1975. Doseck argued on appeal that the circuit court had erred when it denied his motion to dismiss the indictment, and he argued that he had been erroneously charged with the felony offense of second-degree escape instead of the misdemeanor offense of failing to remain within the extended limits of confinement or failing to return to the place of confinement within the time prescribed, a violation of § 14-8-42, Ala.Code 1975. This Court upheld the circuit court’s denial of the motion to dismiss:
“This court has previously held that a lack of evidence as to the elements of the offense charged in the indictment cannot be the basis for the pretrial dismissal of an indictment. In State v. Foster, 935 So.2d 1216, 1216-17 (Ala.Crim.App.2005), this court explained its rationale as follows:
“‘Rule 13.5(c)(1), Ala. R.Crim. P., provides:
“ ‘ “A motion to dismiss the indictment may be based upon objections to the venire, the lack of legal qualifications of an individual grand juror, the legal insufficiency of the indictment, or the failure of the indictment to charge an offense.”
*416 “ ‘The State is correct in its contention that Rule 13.5(c)(1) does not provide for the dismissal of an indictment based on the insufficiency of the evidence or, as in this case, a possible lack of evidence. See State v. Edwards, 590 So.2d 379 (Ala.Crim.App.1991) (establishment of the corpus de-licti requires proof of facts by the State so entwined with the merits of the case that a decision as to whether it had been proved should not be made before trial but should be postponed until trial); State v. McClain, 911 So.2d 54 (Ala.Crim.App.2005) (trial court cannot dismiss the indictment based on a lack of evidence).’
“Therefore, the indictment cannot be dismissed on the grounds Doseck raises on appeal in this case.
“The dissent agrees that a motion to dismiss an indictment is not the proper avenue for challenging the sufficiency of the evidence. The dissent then states that this court has improperly considered Doseck’s motion based on its style rather than its substance and that, in this case, the substance of the motion ‘was purely a question of law — whether the undisputed facts constituted felony escape or misdemeanor escape.’ 8 So.3d at 1026. The dissent further asserts that ‘[t]he trial court, in denying Do-seck’s motion, effectively ruled that, as a matter of law, his actions constituted felony escape and not misdemeanor escape, and Doseck properly reserved that ruling of law for review on appeal during the guilty-plea colloquy.’ 8 So.3d at 1026. However, a trial court does not give advisory opinions on pure questions of law. Here, the trial court was asked to dismiss the indictment based on an argument that the State could not prove the facts necessary to constitute escape in the second degree, and it denied that motion. It is unclear what motion or pleading was contemplated by the dissent. Whether the trial court’s legal opinion about whether the State had properly charged Doseck with escape in the second degree, based upon what the dissent argued were essentially stipulated facts, was correct or incorrect is not material to the issue decided in this case. That issue is whether a trial court can dismiss an indictment before trial based upon an expected failure of the State to be able to prove the facts constituting the offense charged in that indictment.
“The dissent would create a mechanism for examining the validity of the factual underpinning of indictments that is not contemplated by the Alabama Rules of Criminal Procedure. Rule 13.5(c)(1), Ala. R.Crim. P., ‘does not provide for the dismissal of an indictment based on the insufficiency of the evidence or, as in this case, a possible lack of evidence.’ Foster, 935 So.2d at 1217. In his pretrial motion, Doseck asked the court to dismiss his indictment on a ground that would require the circuit court to determine whether the facts sufficed to establish the charged offense. There is no Rule of Criminal Procedure that provides a mechanism for a pretrial challenge to the sufficiency of the evidence. This court is not empowered to add such a mechanism to the Alabama Rules of Criminal Procedure.
“This is not to suggest that a defendant cannot challenge an indictment on constitutional grounds or other grounds allowed by rule, by statute, or by other law. Because Doseck’s motion to dismiss the indictment was based on a challenge of the sufficiency of the evidence, the trial court properly denied the motion.”
Doseck v. State, 8 So.3d at 1024-26.
Like Doseck, Worley sought dismissal of the felony counts on the ground that the *417 State had improperly charged her with felony offenses even though, she argued, the alleged improper actions constituted only misdemeanor offenses. In order to reach its determination that the felony counts were due to be dismissed, the trial court evaluated the evidence the State intended to present at trial, and it concluded that all Worley’s conduct fell within the parameters of the misdemeanor statute. Although the trial court couched its analysis in terms of statutory construction, the trial court truly made a pretrial determination as to the sufficiency of the evidence, and such a determination is not permitted by the Alabama Rules of Criminal Procedure or by Alabama caselaw. Therefore, the trial court should have permitted the State to present to the jury all the evidence it had to offer toward proving both the felony charges and the misdemeanor charges. At the conclusion of the State’s case, Worley will have the opportunity to make a motion for a judgment of acquittal challenging any alleged deficiencies in the State’s attempt to prove a prima facie case, and the trial court can then properly enter a ruling on the sufficiency of the State’s evidence. The trial court erred when it dismissed the felony counts against Worley.
II.
Although we have determined that the trial court erred when it dismissed the felony counts based on its pretrial judgment regarding the sufficiency of the State’s anticipated evidence, our consideration of this case cannot end there because the trial court in its written order stated an alternative reason for dismissing the felony counts. The trial court stated:
“Finally, if statutory construction alone does not resolve the confusion as to the spheres of operation for the competing subsections, this Court would hold that the statute violates federal and state constitutional directives. What conduct constitutes using ‘official authority or position for the purpose of influencing the vote or political action of any person ... ’? If Worley had sent the letter to anyone other than her staff, she would never be prosecuted. Her letter is typical of letters sent by all office seekers. Yet, she is indicted for a felony because she sent it to her staff, even though the felony statute does not mention subordinates or employees.
“Under the State’s theory, any office holder who mails a solicitation letter, identifying his or her office, is guilty of a felony even if sent on campaign letterhead. If that be the case, court dockets will be filling up with current and former politicians. The State’s interpretation demonstrates the harm lurking in § 17 — 1—7(b)—it is so vague that a prosecutor can pick and choose the conduct he wishes to indict.”
(C. 86.)
The State argues that § 17 — 1—7(b) is not vague as applied to Worley’s conduct and that, to the extent the trial court dismissed the felony counts against Worley on the ground that the statute was unconstitutionally vague, the trial court erred. We agree.
For decades federal and state laws, including Alabama’s, have reflected concerns that public employees be permitted to participate in certain political activities and that public officials not use their official authority or influence to affect votes or political action. In United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, 418 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the United States Supreme Court noted the wisdom of prohibitions against certain partisan political activities by federal employees, stating that the country *418 had determined that “it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service, and that the political influence of federal employees on others and on the electoral process should be limited.” 418 U.S. at 557. The Supreme Court in Letter Carriers discussed the steps that had led to the enactment of the statute — a portion of which was under review in that case— prohibiting federal employees from actively participating in political campaigns or political management. 413 U.S. at 557-64. The Court stated that until after the Civil War the spoils system was the “prevalent basis for governmental employment and advancement.” 418 U.S. at 557-58. The Court noted that the spoils system did not survive:
“Congress authorized the President to prescribe regulations for the creation of a civil service of federal employees in 1871, 16 Stat. 514; but it was the Civil Service Act of 1883, c. 27, 22 Stat. 403, known as the Pendleton Act, H. Kaplan, The Law of Civil Service 9-10 (1958), that declared that ‘no person in the public service is for that reason under any obligations to contribute to any political fund, or to render any political service’ and that ‘no person in said service has any right to use his official authority or influence to coerce the political action of any person or body.’ 22 Stat. 404. That Act authorized the President to promulgate rules to carry the Act into effect and created the Civil Service Commission as the agency or administrator of the Act under the rules of the President.
“The original Civil Service rules were promulgated on May 7, 1883, by President Arthur. Civil Service Rule I repeated the language of the Act that no one in the executive service should use his official authority or influence to coerce any other person or to interfere with an election, but went no further in restricting the political activities of federal employees. 8 J. Richardson, Messages and Papers of the Presidents 161 (1899).”
413 U.S. at 558 (emphasis added).
Problems with partisan politics influencing federal service continued, and additional limitations on all federal employees resulted:
“The experience of the intervening years, particularly that of the 1936 and 1938 political campaigns, convinced a majority in Congress that the prohibition against taking an active part in political management and political campaigns should be extended to the entire federal service. 84 Cong. Rec. 4303, 9595, 9604, and 9610. A bill introduced for this purpose, S. 1871, ‘to prevent pernicious political activities,’ easily passed the Senate, 84 Cong. Rec. 4191-4192; but both the constitutionality and the advisability of purporting to restrict the political activities of employees were heatedly debated in the House. Id., at 9594-9639. The bill was enacted, however. 53 Stat. 1147. This was the so-called Hatch Act, named after the Senator who was its chief proponent. In its initial provisions, §§ 1 and 2, it forbade anyone from coercing or interfering with the vote of another person and prohibited federal employees from, using their official positions to influence or interfere with or affect the election or nomination of certain federal officials. Sections 3 and 4 of the Act prohibited the promise of, or threat of termination of, employment or compensation for the purpose of influencing or securing political activity, or support or opposition for any candidate.
*419 “Section 9(a), which provided the prohibition against political activity now found in 5 U.S.C. § 7324(a)(2), with which we are concerned in this case, essentially restated Civil Service Rule I, with an important exception. It made it
“ ‘unlawful for any person employed in the executive branch of the Federal Government, or any agency or department thereof, to use his official authority or influence for the purpose of interfering with an election or affecting the result thereof No officer or employee in the executive branch of the Federal Government, or any agency or department thereof, shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their opinions on all political subjects.’ ”
413 U.S. at 559-61 (emphasis added).
The Supreme Court in Letter Carriers observed that all 50 States had also restricted the political activities of their state’s employees. Id. at 563 & n. 11 (citing Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The Court held that the Hatch Act was not unconstitutionally vague.
On the same day Letter Carriers was released, the United States Supreme Court also released Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), which considered claims that a state statute that restricted the partisan political activities of state civil servants in ways similar to the Hatch Act’s limitation of federal employees’ participation in partisan political activities was vague and overbroad. The Court rejected those claims and upheld the statute.
The Broadrick Court stated:
“Section 818 [of Oklahoma’s Merit System of Personnel Administration Act, Okla. Stat. Ann., Tit. 74, § 801 et seq., repealed by laws 1982, c. 338, § 61, eff. July 1, 1982 (currently Okla. Stat. Ann. tit. 74, § 840-2.9) ] was enacted in 1959 when the State first established its Merit System of Personnel Administration. The section serves roughly the same function as the analogous provisions of the other 49 States, and is patterned on § 9(a) of the Hatch Act. Without question, a broad range of political activities and conduct is proscribed by the section. Paragraph six, one of the contested portions, provides that ‘[n]o employee in the classified service ... shall, directly or indirectly, solicit, receive, or in any manner be concerned in soliciting or receiving any assessment ... or contribution for any political organization, candidacy or other political purpose.’ Paragraph seven, the other challenged paragraph, provides that no such employee ‘shall be a member of any national, state or local committee of a political party, or an officer or member of a committee of a partisan political club, or a candidate for nomination or election to any paid public office.’ That paragraph further prohibits such employees from ‘tak[ing] part in the management or affairs of any political party or in any political campaign, except to exercise his right as a citizen privately to express his opinion and to cast his vote.’ As a complementary proscription (not challenged in this lawsuit) the first paragraph prohibits any person from ‘in any way being ‘favored or discriminated against with respect to employment in the classified service because of his political ... opinions or affiliations.’ ”
413 U.S. at 603-06 (footnotes omitted).
The Court rejected Broadrick’s claim that the sections of the Oklahoma statute *420 were vague and overbroad. As to Broad-riek’s claim that the statute was overbroad because it punished permissible political conduct as well as unprotected conduct, the Court held:
“Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e.g., Austin v. The Aldermen, 7 Wall. 694, 698-699 [19. L.Ed. 224] (1869); Supervisors v. Stanley, 105 U.S. 305, 311-315 (1882); Hatch v. Reardon, 204 U.S. 152, 160-161 (1907); Yazoo & M.V.R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219-220 (1912).... A closely related principle is that constitutional rights are personal and may not be asserted vicariously. See McGowan v. Maryland, 366 U.S. 420, 429-430 (1961). These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation’s laws. See Younger v. Harris, 401 U.S. 37, 52 (1971).”
413 U.S. at 610-11.
As to the vagueness challenge, the Court held:
“We have held today that the Hatch Act is not impermissibly vague. [United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, 413 U.S. 548 (1973)]. We have little doubt that § 818 is similarly not so vague that ‘men of common intelligence must necessarily guess at its meaning.’ Connally v. General Construction Co., 269 U.S. 385, 391 (1926).... Whatever other problems there are with § 818, it is all but frivolous to suggest that the section fails to give adequate warning of what activities it proscribes or fails to set out ‘explicit standards’ for those who must apply it. Grayned v. City of Rockford, [408 U.S. 104, 108 (1972)]. In the plainest language, it prohibits any state classified employee from being ‘an officer or member’ of a ‘partisan political club’ or a candidate for ‘any paid public office.’ It forbids solicitation of contributions ‘for any political organization, candidacy or other political purpose’ and taking part ‘in the management or affairs of any political party or in any political campaign.’ Words inevitably contain germs of uncertainty and, as with the Hatch Act, there may be disputes over the meaning of such terms in § 818 as ‘partisan,’ or ‘take part in,’ or ‘affairs of political parties. But what was said in Letter Carriers, ante, at 578-579, is applicable here: ‘there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to. the public interest.’ Moreover, even if the outermost boundaries of § 818 may be imprecise, any such uncertainty has little relevance here, where appellants’ conduct falls squarely within the ‘hard core’ of the statute’s proscriptions and appellants concede as much. See Dombrowski v. Pfister, 380 U.S. 479, 491-492 (1965); United States v. National Dairy Products Corp., 372 U.S. 29 (1963); Williams v. United States, 341 U.S. 97 *421 (1951); Robinson v. United States, 324 U.S. 282, 286 (1945); United States v. Wurzbach, 280 U.S. 396 (1930).”
Id. at 607-08 (footnotes omitted).
The Alabama Legislature, like Congress and like the legislatures of our sister states, has enacted legislation intended to allow public employees to participate in political activities as do private citizens but to be free from reprisal or threats to job security from persons with authority over them. Section 17 — 1—7(b) is one' component of Alabama’s legislative scheme to ensure this result, and the terms used in that statute are similar to the terms used in the Hatch Act and in some statutes enacted in other states. See infra note 7. Based on our review of the principles and holdings of Letter Carriers and Broadrick and the application of Alabama law, we hold that the § 17-l-7(b) was not vague as applied to Worley. Worley’s claim that dismissal of the felony counts was proper because the statute is unconstitutionally vague is therefore meritless.
The vagueness doctrine is based on principles of due process guaranteed by the Fifth Amendment to the Constitution of the United States and by Art. I, § 6, of the Constitution of Alabama of 1901. “A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008).
“The judicial power to declare a statute void for vagueness ‘should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.’ Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962).”
Vaughn v. State, 880 So.2d 1178, 1195-96 (Ala.Crim.App.2003). Additionally, in order to obtain relief on her claim that the felony statute was unconstitutionally vague, Worley had to establish that the statute was vague as applied to her own conduct, regardless of any potentially vague applications to others. See Ex parte Woodard, 631 So.2d 1065, 1069 (Ala.Crim.App.1993). See also Sterling v. State, 701 So.2d 71 (Ala.Crim.App.1997).
In its order dismissing the felony counts of the indictment the trial court queried: “What conduct constitutes using ‘official authority or position for the purpose of influencing the vote or political action of any person ... ’?” (C. 86.) When construing a statute, the language of the statute as a whole is first examined and the words are given their natural and ordinary meaning. E.g., Ex parte McCormick, 932 So.2d 124, 132 (Ala.2005). Although the terms “official authority or position” or “influencing the vote or political action” are not specifically defined in the Alabama Code, we do not find that that fact renders the statute unconstitutionally vague. See Vaughn v. State, 880 So.2d at 1196 (citing cases in which statutes were held not to be void as unconstitutionally vague, even though certain terms were not defined). Where the plain meaning of the words of a statute are clear, there is no constitutional ambiguity and there is no *422 need for judicial construction. The terms in § 17-l-7(b), particularly as applied to Worley, are not so vague that people of ordinary intelligence are required to guess at their meaning.[7]
Worley was Alabama’s Secretary of State and thus clearly had “official authority or position.” In the letter sent to the five employees, Worley arguably invoked that official authority or position by repeatedly mentioning her work in the Office of the Secretary of State, along with the work of the recipients of the letter, who were obviously her subordinates. Furthermore, the State alleged that while relying on her official authority or position, Worley attempted to influence the vote of her subordinates and to influence their political action by asking them to vote for her and to take additional specific actions in support of her campaign for reelection. Thus, even if the outermost boundaries of the felony statute might be questioned in another case with different facts, Worley’s alleged conduct in this case falls firmly within the margins of the prohibitions of the statute. Therefore, the trial court’s concern that, based on the State’s inter *423 pretation of the statute, “any office holder who mails a solicitation letter, identifying his or her office, is guilty of a felony even if sent on campaign letterhead” (C. 86), and any other concerns about additional hypothetical cases that might be envisioned are not relevant to our resolution of this case. The statute is not vague as it applies to Worley.
The State will be obliged at trial to prove the allegations that Worley attempted to use her official position or authority to influence votes and political action as it alleged in the indictment; but those are issues of fact for the jury. The basic allegations as charged are not unconstitutionally vague as applied to Worley, and dismissal of the indictment on this alternative ground constituted reversible error.

Conclusion

A concern for federal employees expressed by Congress when it enacted the Hatch Act in 1939 was noted by the United States Supreme Court in Letter Carriers:
“A related concern, and this remains as important as any other, was to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs.”
418 U.S. at 566.
This concern remains a significant one for all employees in public service, including the five employees in this case who received the campaign letter from Worley. The Alabama Legislature has enacted sép-arate statutory provisions addressing prohibited political activities. The State has properly alleged that Worley committed acts that violate both of those provisions, and the trial court erred when it dismissed the felony charges against Worley based on its judgment about the possible lack of evidence to. support the felony charges. Furthermore, although the trial court stated that the felony statute was unconstitutionally vague, we hold that the statute was not vague as it applied to Worley and that no dismissal was warranted on that ground, either.
For the foregoing reasons, the judgment of the trial court is due to be reversed, and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
KELLUM, J., concurs. HARWOOD, Special Judge, concurs specially, with opinion. SHORES, Special Judge, dissents, without opinion.[8] WISE, P.J., and WINDOM and MAIN, JJ., recuse themselves.

.This case was originally assigned to another judge on this Court. Presiding Judge Kelli Wise, Judge Maty Windom, and Judge Jim Main recused themselves. The case was reassigned to Judge Welch on May 20, 2009. On July 21, 2009, Chief Justice Sue Bell Cobb of the Alabama Supreme Court appointed retired Alabama Supreme Court Justice Janie Shores to sit specially on this case pursuant to §§ 12 — 18—7(b) and 12-18-10(e), Ala.Code 1975. On October 1, 2009, Chief Justice Cobb appointed retired Alabama Supreme Court Justice R. Bernard Harwood, Jr., to sit specially on this case pursuant to §§ 12 — 18— 7(b) and 12-18-10(e), Ala.Code 1975.

. Worley was elected to the office in November 2002, and she was defeated in the November 2006 general election. This Court may take judicial notice of election results. See Homan v. Beard, 268 Ala. 22, 104 So.2d 914 (1958).

. The statutes were recodified in 2007, but the recodification did not affect the substance of the charges at issue here. See infra notes 4 and 5.

. In Act No. 2006-570, Ala. Acts 2006, effective January 1, 2007, the Alabama Legislature *414 recodified § 17 — 1—7(b) as § 17-17-4, Ala. Code 1975. That statute now provides: "Any person who attempts to use his or her official authority or position for the purpose of influencing the vote or political action of any person shall be guilty, upon conviction, of a Class C felony.”

. In Act. No. 2006-570, Ala. Acts 2006, effective January 1, 2007, the Alabama Legislature recodified § 17-l-7(c) as § 17-17-5, Ala. Code 1975. The language of the statute remained unchanged.

. Section 17-l-8(a), Ala.Code 1975, the section in effect when Worley allegedly committed the acts relevant to this criminal proceeding provided that the secretary of state is the chief elections official in the State and that the secretary of state is required to provide uniform guidance for election activities. Section 17-l-8(a) was substantively unchanged but was recodified as § 17-l-3(a), Ala.Code 1975, by Act. No. 2006-570, Ala. Acts 2006.

. The Alabama Legislature could amend the statute to define these terms, but that is not a matter for an appellate court to undertake. We note only that other legislative bodies have defined some of the terms in legislation similar to Alabama’s statutes. For example, 5 C.F.R. § 734.306, one of the regulations accompanying the Hatch Act, provides:
" § 734.302 Use of official authority; prohibition.
“(a) An employee may not use his or her official authority or influence for the purpose of interfering with or affecting the result of an election.
"(b) Activities prohibited by paragraph (a) of this section include, but are not limited to:
"(1) Using his or her official title while participating in political activity;
"(2) Using his or her authority to coerce any person to participate in political activity; and
"(3) Soliciting, accepting, or receiving uncompensated individual volunteer services from a subordinate for any political purpose.
“Example 1: An employee who signs a letter seeking uncompensated volunteer services from individuals may not identify himself or herself by using his or her official title. However, the employee may use a general form of address, such as 'The Honorable.’
“Example 2: A noncareer member of the Senior Executive Service, or another employee covered by this subpart, may not ask his or her subordinate employees to provide uncompensated individual volunteer services for a political party, partisan political group, or candidate for partisan political office. Moreover, he or she may not accept or receive such services from a subordinate employee who offers to donate them.
"Example 3: An employee may not require any person to contribute to a partisan political campaign in order to win a Federal contract.”
The Maine Legislature, in the statute prohibiting certain political activity, has included the following provision:
"§ 7056-A. Political activity
"1. Use of official authority. An officer or employee in the classified service or an employee from the executive branch in the unclassified service of this State may not use that officer's or employee’s official authority, influence or supervisory position for the purpose of:
"A. Interfering with or affecting the result of a partisan election or nomination for elective office; or
"B. Attempting to intimidate, threaten, coerce, command or influence a person to give or withhold a political contribution or to engage or not to engage in any form of political activity as defined in this section.
"For the purpose of this subsection, ‘use of official authority or influence’ includes promising to confer or conferring a benefit such as compensation, a grant, contract, license or ruling; effecting or threatening to effect a reprisal, such as deprivation of compensation, a grant, contract, license or ruling; or taking, directing others to take, recommending, processing or approving any personnel action.”
Me.Rev.Stat. Ann. tit. 5, § 7056-A (2002).