These appeals present several issues. Specifically, the facts raise questions concerning (1) the applicability of the Alabama Administrative Procedure Act, Ala. Code 1975, § 41-22-1 et seq.; (2) standing; and (3) the proper interpretation of Ala. Code 1975, § 37-6-1 et seq., governing the establishment and operation of electric cooperatives. *Page 272 
Coosa Valley Electric Cooperative, Inc. ("Coosa Electric"), is a special-purpose corporation that is, without question, a statutory creature. Formed under the provisions of what are now §§37-6-1 to 37-6-49 of the Alabama Code, Coosa Electric has provided electric service to its members since 1939. However, in 1996, Coosa Electric decided to get into the business of distributing propane gas. To that end, Coosa Electric incorporated Coosa Valley Propane Services, Inc. ("Coosa Propane"), in April of that year. Coosa Electric's officers and directors also served as the officers and directors of Coosa Propane. In September 1996, after Coosa Electric's members had approved the venture into the propane business, Coosa Propane purchased 100% of the stock of DeKalb County LP Gas Company, Inc. ("DeKalb Gas"). The purchase of DeKalb Gas meant that Coosa Propane did not need to acquire from the LP Gas Board a new LP gas permit, because DeKalb Gas already had a permit as an existing propane provider. After the purchase, the same officers and directors that served Coosa Electric and Coosa Propane were made officers and directors of DeKalb Gas.
In November 1996, a group of propane dealers in competition with DeKalb Gas ("Propane Dealers") filed an action in the Shelby County Circuit Court against Coosa Electric, Coosa Propane, and DeKalb Gas, requesting declaratory and injunctive relief based primarily on Blue Cross Blue Shield v. Protective Life Ins. Co.,527 So.2d 125 (Ala.Civ.App. 1987). The Propane Dealers argued that Coosa Electric, as a corporation formed under § 37-6-1 et seq., was prohibited from entering into the propane business because, they said, such a venture would be outside the scope of its enabling statute. Coosa Electric claimed that, although it was organized for a specific purpose, it was nonetheless given broad power by the legislature to acquire any amount of stock in other businesses, even if those businesses had been organized for a different purpose. In March 1998, the trial court entered a summary judgment for the Propane Dealers, holding that Coosa Electric's involvement in the propane business was unlawful. The trial court's judgment also permanently enjoined Coosa Electric from engaging in the propane business, and it directed Coosa Electric to divest itself of majority control in DeKalb Gas; that is, Coosa Electric was prohibited from holding more than 49% of the DeKalb Gas stock. Coosa Electric, Coosa Propane, and DeKalb Gas appealed. We reverse and remand.
The appellants raise three main issues: (1) Whether the Alabama Administrative Procedure Act ("AAPA") applies to these facts; (2) whether the Propane Dealers had standing to sue; and (3) whether the powers of stock acquisition under § 37-6-3(9) allow Coosa Electric to own 100% of DeKalb Gas, when propane services are not listed among the purposes of cooperatives in § 37-6-2.
Because there are no genuine issues of material fact, the summary judgment is appropriate only if the Propane Dealers were entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Wright v. Wright, 654 So.2d 542, 543 (Ala. 1995). The question to be answered, then, is whether the trial court correctly decided the three issues above as a matter of law.
 Alabama Administrative Procedure Act
The appellants argue that this case is governed by the AAPA and, therefore, that the trial court had no jurisdiction to hear the case until all administrative remedies had been exhausted. Ala. Code 1975, § 41-22-20. Indeed, this Court has acknowledged that failure to exhaust proper administrative remedies can preclude a court from acquiring subject-matter jurisdiction. Ex parte Crestwood Hosp. Nursing Home, Inc. 670 So.2d 45 (Ala. 1995); Faulkner v. University of Tennessee, 627 So.2d 362, 365 (Ala. 1992) (citing Ex parte Graddick, 495 So.2d 1367 (Ala. 1986)). Even the trial court in this case pointed out that it would have no jurisdiction if the AAPA applied. The Propane Dealers, however, argue that the AAPA does not apply, because, they contend, the limited involvement of Coosa Electric with the LP Gas Board did not amount to an administrative proceeding; therefore, they argue, there were no administrative remedies to be sought. We agree. *Page 273 
In their arguments before the trial court concerning lack of jurisdiction, the appellants relied on § 41-22-20(a), a part of the AAPA:
 "(a) A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."
(Emphasis added.) A "contested case" is defined, in pertinent part, as "[a] proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Ala. Code 1975, § 41-22-3(3). Also, the AAPA provides that "[i]n a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice in writing delivered either by personal service as in civil actions or by certified mail, return receipt requested." Ala. Code 1975, § 41-22-12(a). It is clear from these statutes that a "contested case" is a proceeding before an agency in which legal rights, duties, or privileges are determined after one has been afforded the opportunity to appear and be heard. In the case at hand, the evidence before the trial court indicated that because it was acquiring an already existing gas company (DeKalb Gas), Coosa Electric did not need to go before the LP Gas Board and request a new gas permit. All that was required of Coosa Electric, according to a letter from the administrator of the LP Gas Board, was to furnish the Board with an updated copy of DeKalb Gas's articles of incorporation and a new certificate of insurance. Despite the appellants' arguments to the contrary, this "action" is not tantamount to the Board's making a "final decision in a contested case." Therefore, we hold that, under these facts, the AAPA does not govern and the trial court properly assumed jurisdiction over the case.
 Standing
The appellants contend that the Propane Dealers do not have standing, because, they argue, the Propane Dealers are simply "competitors," under this Court's holding in Alabama State Florists Ass'n, Inc. v. Lee County Hosp. Bd., 479 So.2d 720 (Ala. 1985). In that case, this Court stated that "[a]s a rule, `a competitor cannot attack acts of a corporation as ultra vires, merely on the ground of injurious competition.'" 479 So.2d at 722. However, the Propane Dealers argue that they do have standing, under this Court's decision in Traders Farmers Bank v. Central Bank,294 Ala. 622, 320 So.2d 638 (1975). In Traders Farmers Bank, this Court wrote, "Clearly, the threat of competition is sufficient to provide standing to contest the legality of a competitor's facility." 294 Ala. at 625-26, 320 So.2d at 641. Although those two cases may require reconciliation at some point, the case now before this Court does not require it. Here, the Propane Dealers sought injunctive relief. Therefore, if any of the Propane Dealers had standing under some other rationale then we need not decide whether the others also had standing, for if the injunction was proper as to one of the Propane Dealers then it will clearly benefit all of the Propane Dealers. That is the case here.
As the Propane Dealers point out in their brief and as is evidenced in the record, one of their group, Suburban Gas, Inc., is a member of Coosa Electric. For certain economic associations, such as cooperatives, this Court has previously held that "members" are "the equivalent of `stockholders' of a corporation and thus . . . enjoy the same equity ownership and property rights that shareholders enjoy in a commercial corporation." Opinion of the Justices No. 262, 373 So.2d 293, 296 (Ala. 1979); see also Ala. Code 1975, § 10-4-190. A member of a cooperative, then, would be able to contest a cooperative's power to act, under §10-2B-3.04(b)(1), which states that an ultra-vires challenge may be brought "[i]n a proceeding by a shareholder against the corporation to enjoin the act." This language does not concern derivative actions, because actions brought derivatively are specifically dealt with in § 10-2B-3.04(b)(2), *Page 274 
which allows a challenge to be brought "[i]n a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative." Ala. Code 1975, § 10-2B-3.04(b)(2) (emphasis added). We agree, therefore, with the Propane Dealers that a member of a cooperative has standing to challenge the ultra-vires acts of that cooperative, independently of any derivative action. Because Suburban Gas is a member of Coosa Electric, we conclude that it has standing in this case. As we stated above, because Suburban Gas sought injunctive relief it is unnecessary for us to decide at this point whether any of the other Propane Dealers have standing as well.
 Statutory Construction
The appellants argue that, even if the Propane Dealers have standing, the trial court ignored the plain meaning of § 37-6-3(9) and erroneously interpreted that section as barring Coosa Electric from acquiring a majority of the stock in DeKalb Gas. The Propane Dealers assert that, under certain rules of statutory construction and under the rationale of the Court of Civil Appeals in Blue Cross Blue Shield v. Protective Life Ins. Co., supra, the trial court's order is correct. We disagree.
In Blue Cross, the Court of Civil Appeals, dealing with a factual situation that is similar to Coosa Electric's, had to interpret certain statutes. Blue Cross and Blue Shield of Alabama ("Blue Cross"), a medical insurance company, sought to expand its market by purchasing United Trust Life Insurance Company. 527 So.2d at 126. According to the Court of Civil Appeals, Blue Cross was "purely a statutory creature," deriving all of its powers from Ala. Code 1975, §§ 10-4-100 to 10-4-115. Id. In opposition to the attempted acquisition, several interested life insurance companies intervened at the hearings held before the insurance commissioner, but the commissioner approved Blue Cross's actions. Id. The Montgomery County Circuit Court vacated the commissioner's order, holding that Blue Cross's powers of stock acquisition were limited by its enabling statutes. Id. The Court of Civil Appeals affirmed. Because the facts of Blue Cross and the facts of the present case are similar, a comparison of the relevant statutes will be helpful.
The Court of Civil Appeals stated that Blue Cross was limited by its express statutory purpose, as stated in § 10-4-100:
 "Any nonstock corporations organized not for profit for the purpose of establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan pursuant to contracts are authorized and shall be governed by the provisions of this article."
(Emphasis added.) However, Blue Cross argued that another Code section, § 10-3A-20(7), gave it broad powers of stock acquisition. That section allowed these powers:
 "(7) To purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, other domestic or foreign corporations, whether for profit or not for profit, associations, partnerships or individuals, or direct or indirect obligations of the United States, or of any other government, state, territory, governmental district or municipality or of any instrumentality thereof."
Section 10-3A-20(7) was applicable to Blue Cross through §10-4-101, which dealt with the proper contents of Blue Cross's articles of incorporation. Section 10-4-101 provided:
 "The certificate may also contain any other provisions, not inconsistent with the provisions of this article, which the incorporators may desire to insert for the regulation of the business or affairs of the corporation or which would be permitted nonprofit corporations by Chapter 3A of this title. The filing in said probate office of such certificate effects the creation of a corporation for the purpose of establishing, maintaining and operating a health care service plan as provided for in this article."
(Emphasis added.) Therefore, as the Court of Civil Appeals properly noted, Blue Cross could make use of its powers of stock acquisition, *Page 275 
but the "power-giving" section (§ 10-3A-20(7)) was expressly limited by § 10-4-101, which required that the use of those powers be "not inconsistent with the provisions of [the] article," including the limited purpose set forth in § 10-4-100. Blue Cross, 527 So.2d at 127. The Court of Civil Appeals concluded that marketing life insurance through a subsidiary company was outside the scope of Blue Cross's limited statutory purpose.
By comparison, Coosa Electric falls under similarly codified "purpose" language:
 "Cooperative, nonprofit membership corporations may be organized under this chapter for the purpose of supplying electric energy and promoting and extending the use thereof, for the purpose of promoting and extending the use of water and water systems and sanitary sewer systems and for the purpose of providing to its members and other persons services solely for the reception of television programming through the use of television program decryption equipment and subscriber owned, leased or rented satellite dishes, but such equipment shall not be utilized for the bi-directional transmission of voice, data or other signal."
Ala. Code 1975, § 37-6-2 (emphasis added). Also, Coosa Electric's articles of incorporation are governed by language similar to that applicable in Blue Cross:
 "The articles of incorporation of a cooperative shall recite in the caption that they are executed pursuant to this chapter, shall be signed and acknowledged by each of the incorporators, and shall state: The name of the cooperative; the address of its principal office; the names and addresses of the incorporators; the names and addresses of the persons who shall constitute its first board of trustees; and any provisions not inconsistent with this chapter deemed necessary or advisable for the conduct of its business and affairs. Such articles of incorporation shall be submitted to the Secretary of State for filing as provided in this chapter. It shall not be necessary to set forth in the articles of incorporation of a cooperative the purpose for which it is organized or any of the corporate powers vested in a cooperative under this chapter."
Ala. Code 1975, § 37-6-6 (emphasis added). However, Coosa Electric's stock-acquisition powers are expressly and specifically broader in scope than those of Blue Cross, and they do not require that if Coosa Electric purchases stock in other companies it must be in companies with the same general purposes stated in § 37-6-2. Section 37-6-3 provides:
"A cooperative shall have the power:
". . . .
 "(9) To become a member of one or more other cooperatives and to acquire, hold and dispose of and exercise any power or right with respect thereto or with respect to the shares or other interests in, or obligations of other public or private domestic or foreign corporations, associations, partnerships or individuals whether or not such entities pursue purposes, exercise powers, or engage in activities that the cooperative is authorized to pursue, exercise, or engage in."
(Emphasis added.) The appellants argue that, according to the plain meaning of this section, Coosa Electric should not be prohibited from purchasing 100% of DeKalb Gas stock. The Propane Dealers argue that if § 37-6-3(9) is read literally, then § 37-6-2
will have no limiting effect, i.e., the restrictions placed on the purposes and functions of cooperatives, as stated in § 37-6-2, will be meaningless.
In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp.,602 So.2d 344, *Page 276 
346 (Ala. 1992)); see also Tuscaloosa County Comm'n v. Deputy Sheriffs' Ass'n, 589 So.2d 687, 689 (Ala. 1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm'n,524 So.2d 357, 360 (Ala. 1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala. 1984); Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534, 536 (Ala. 1983); Town of Loxley v. Rosinton Water, Sewer, Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala. 1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997).
Section 37-6-3(9) is not ambiguous. It states that a cooperative may purchase stock in an existing corporation regardless of that corporation's purposes or activities. Also, there is no limitation on the amount of stock that a cooperative may purchase in a particular entity. Therefore, according to §37-6-3(9), Coosa Electric was acting within its statutory authority when it purchased 100% of the stock in DeKalb Gas. This reading does not nullify the limited purposes for which cooperatives may be established, as stated in § 37-6-2, because an entity must first be established as a cooperative in one of the four categories (providing electric, water, sewage, or television services) before these § 37-6-3 powers can be utilized.
The Propane Dealers argue further that § 37-6-3(9) makes much more sense when it is looked at as an "investment" statute. Under such a reading, § 37-6-3(9) would allow cooperatives to gain revenue by investing in, but not owning, general purpose corporations. This is a sensible way to look at the section, because activities allowed by an "investment" statute would need to be broader than the limited cooperative purpose, so that a cooperative would not be restricted to investing only in electric, water, sewage, or television companies, which may not be the best financial choices.
Also, the Propane Dealers assert that this interpretation comports with the intent of the legislature as demonstrated by: (1) the title of the act that amended § 37-6-9(3); (2) the legislative history behind the section; (3) certain presumptions concerning the legislature's knowledge; (4) the in pari materia rule, which states that legislative intent may be demonstrated from construing certain sections of a statute together to determine the meaning of a particular section; and (5) examining the entire statute as a whole to discover the intent behind a particular provision. We have, in the past, made use of these aids to statutory construction. See Jordan v. Reliable Life Ins. Co., 589 So.2d 699, 702 (Ala. 1991) (stating that "the title of an act may serve as an aid to statutory interpretation"); McCausland v. Tide-Mayflower Moving Storage,499 So.2d 1378, 1382 (Ala. 1986) (stating that subsections of a statute "should be construed together to ascertain the meaning and intent of each"); Bowlin Horn v. Citizens Hosp., 425 So.2d 1065,1070 (Ala. 1982) (stating that "in determining legislative intent, courts may look to the history of the statute"); Employees' Retirement Sys. v. Head, 369 So.2d 1227, 1228 (Ala. 1979) (stating that, "[i]n arriving at a determination of the intent of the legislature, the whole statute under construction should be examined and, if possible, each section should be given effect"); Beasley v. MacDonald Eng'g. Co., 287 Ala. 189, 197,249 So.2d 844, 851 (1971) (utilizing the "presumption that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication").
In fact, as the Propane Dealers argue, these aids may give weight to their reading of § 37-6-3(9) as an "investment" provision. For example, if this section is read in the light of all of the other powers enumerated in § 37-6-3, one might think that the legislature may have intended § 37-6-3(9) to be a more limited provision than the words would allow. This is because every other enumerated power specifically refers only to powers *Page 277 
associated with the four purposes for which a cooperative may be established. See Ala. Code 1975, §§ 37-6-2 and 37-6-3(9). However, another way to look at it would be to say that the legislature intended to regulate the cooperatives' actions with regard to those four purposes and that it did not intend to regulate the cooperatives' interests in other corporations.
Regardless, the point is that it is not our place to engage in such a guessing game. That is why we must look first to the plain meaning of the words the legislature used. We should turn to extrinsic aids to determine the meaning of a piece of legislation only if we can draw no rational conclusion from a straightforward application of the terms of the statute. Although there is validity to the Propane Dealers' arguments that Coosa Electric is "bootstrapping" its way into a business that it would have no statutory authority to begin as a cooperative, those arguments should be directed to the legislature, not to this Court. Therefore, we conclude, based on the plain wording of § 37-6-3(9), that the trial court erred, as a matter of law, in entering the summary judgment for the Propane Dealers and in enjoining Coosa Electric from owning 100% of the DeKalb Gas stock.
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
Hooper, C.J., and Maddox, Almon, See, and Lyons, JJ., concur.
Shores, Kennedy, and Cook, JJ., concur in the result.