On Remand from the Alabama Supreme Court

WELCH, Presiding Judge.
A Montgomery County grand jury indicted Nancy Lillian Worley, the former Secretary of State of Alabama,[1] with five felony violations of § 17 — 1—7(b), Ala.Code 1975, and five misdemeanor violations of § 17 — 1—7(c), Ala.Code 1975. Worley filed a motion to dismiss the indictment, and the trial court dismissed the felony charges. Following an appeal by the State, this Court reversed the trial court’s judgment after determining that the trial court’s dismissal was an impermissible fact-based determination of the sufficiency of the proposed evidence. State v. Worley, 102 So.3d 408 (Ala.Crim.App.2009). Worley petitioned the Alabama Supreme Court for a writ of certiorari, and that Court granted the writ, in part. On September 10, 2010, the Alabama Supreme Court issued an opinion reversing this Court’s judgment, concluding “that the State invited the error of which it now complains when it laid out for the trial court the evidence it expected to offer in opposition to Worley’s motion without informing the court that it would be premature for it to consider that evidence.” Ex parte Worley, 102 So.3d 428, 434 (Ala.2010). The Alabama Supreme Court remanded the case for further proceedings “in the context of the evidence proffered by the State, including a consideration of the merits of the State’s argument that the trial court erred in dismissing the felony charges against Worley and a substantive consideration of the questions of statutory interpretation that led the trial court to dismiss the felony charges.” That Court entered a certificate of judgment on September 29, 2010.
The relevant facts were set out in this Court’s previous opinion:
“In March 2007, a Montgomery County grand jury returned a 10-count in *438 dictment against Worley; the charges were related to a letter Worley had mailed to 5 of her employees during the 2006 Democratic primary campaign. For each employee who received a letter, the State filed two charges against Worley; one count charged Worley with a felony violation of § 17 — 1—7(b), Ala. Code 1975, and one count charged Wor-ley with a misdemeanor violation of § 17-l-7(c), Ala.Code 1975. Counts 1, 3, 5, 7, and 9 of the indictment were felony charges, and they alleged:
“ ‘The Grand Jury of said County charge that, before the finding of this Indictment, Nancy Lillian Worley, alias Nancy Worley, whose name is otherwise unknown to the Grand Jury, did attempt to use her official authority or position, to-wit: the Secretary of State for the State of Alabama, for the purpose of influencing the vote or political action of any person, to-wit: [name of letter recipient], by soliciting: financial contributions, placement of a bumper sticker on a vehicle, “door-to-door” activities, “telephone bank” activities, “letter writing” activities, “fundraising” activities, the obtaining of a “yard sign,” and/or the providing of “clerical” assistance, in violation of Section 17-l-7(b) [now § 17-17-4] of the Code of Alabama, against the peace and dignity of the State of Alabama.’
“(C. 5-7.)
“Counts 2, 4, 6, 8, and 10 of the indictment were misdemeanor charges, and they alleged:
“ ‘The Grand Jury of said County further charge that, before the finding of this Indictment, Nancy Lillian Worley, alias Nancy Worley, whose name is otherwise unknown to the Grand Jury, an officer or employee of the State of Alabama, to-wit: the Secretary of State for the State of Alabama, did solicit a political campaign contribution from another employee, to wit: [name of letter recipient], who worked for the said Nancy Lillian Worley in a subordinate capacity, in violation of Section 17-l-7(c) [now § 17-17-5] of the Code of Alabama, against the peace and dignity of the State of Alabama.’
“(C. 5-7.)
“Worley sent the following letter to the five employees named in the indictment:
“ ‘Dear [name of employee],
“ Working together, we have been able to achieve MANY successes in the Secretary of State’s Office over the past three years. We have also faced several challenges, yet our office is stronger today, more productive, more service-oriented, and more respected than ever before! THANK YOU!
‘“You have probably heard by the state government “grapevine” that I am running for re-election, but I want to ask for your support and your vote in the June 6, 2006, Democratic Primary Election. In 2003, when I entered the Secretary of State’s Office, I requested that we not discriminate against anyone because of his/her politics, race, religion, social status, etc. Thus, if you choose to support another candidate, you have every right to make that decision without any problems from me.
“ T am enclosing an envelope on which you may volunteer, request a yard sign, etc.; however, you may also choose to destroy this envelope. You will be given the same professional respect you have previously been given if you choose the latter.
“ T will be honored if you will attach the enclosed bumper sticker to your *439 vehicle’s bumper or rear window. If you need additional bumper stickers, please call my home/campaign number ... and leave a message.
“Thank you again for your hard work to make the Secretary of State’s Office one of the best in state government — in Alabama and throughout the nation.
“ ‘Sincerely yours,
“ ‘/s/ Nancy L. Worley
“ ‘Nancy L. Worley’
“(C. 74.) (Emphasis and capitalization in original.) The mailing also included a campaign bumper sticker and a pledge envelope offering opportunities to support the campaign with financial contributions and participation in such activities such as fund-raising, letter writing, and working the telephone bank.
“On July 6, 2007, Worley filed a motion to dismiss all the charges against her. The State filed a written response to the motion to dismiss on July 11, 2007. The trial court held hearings on the motion to dismiss on July 9 and July 11, 2007, and the parties presented arguments at both hearings. At the July 11 hearing, the trial court stated that it was dismissing the five felony charges and that it would enter a written order. On July 16, 2007, the trial court issued a written order dismissing the five felony charges. (C. 82-86.) The trial court stated in the order that because § 17-1-7(c) specifically addressed campaign practices involving subordinates, the more general felony statute— § 17-1-7(b) — did not control. The trial court also concluded that the State had overreached by attempting to charge misdemeanor offenses as felony offenses. The trial court also stated that, ‘if statutory construction alone does not resolve the confusion as to the spheres of operation for the competing subsections,’ it would hold that § 17 — 1—7(b) was unconstitutionally vague.”
State v. Worley, 102 So.3d at 410-12 (footnote omitted).

Analysis

The State argues that a jury could properly determine from the evidence the State expected to present at trial that Worley violated both the misdemeanor statute and the felony statute. The State contends that Worley used her position as secretary of state, “the chief elections official in the state,” § 17-l-8(a), Ala.Code 1975,[2] to solicit from her subordinates financial contributions and assistance on her campaign such as letterwriting, fund-raising, and working on the telephone bank; those actions violated the misdemeanor statute, the State argues. Worley’s other acts — asking employees of the secretary of state’s office for their vote, asking employees to display bumper stickers and yard signs — combined with evidence indicating that Worley told her employees that she could learn whether they had voted and for whom they had voted — constituted violations of the felony statute, the State argues. Because the two statutes regulate different types of conduct, the State says, there is no conflict between the statutes and, therefore, the trial court had no basis for determining that the misdemeanor statute was more specific and was the only statute that applied to the facts of this case. The State also argues that, to the extent the trial *440 court based its dismissal of the felony-charges on its concerns about the reasonableness of the felony statute, the trial court erred because the Alabama Legislature, not the courts, formulates public policy. In response, Worley argues that the trial court correctly dismissed the felony counts against her because, she says, the misdemeanor statute expressly regulates the activity charged here and that the mailing and her “polite request with a promise that there would be no reprisal against those who declined” could not constitute a felony under any reasonable understanding of the felony statute. (Wor-ley’s brief, p. 30.) Worley also argues that the felony statute is unconstitutional because it is vague.
A. The State’s Proffered, Evidence
This Court has been directed by the Alabama Supreme Court to evaluate the trial court’s ruling in light of the evidence submitted by the State in opposition to Worley’s motion to dismiss. We begin with the State’s summary of expected evidence, as set forth in its written response to Worley’s motion to dismiss:
“Specifically, the State expects to prove at trial that [Worley], as Secretary of State for the State of Alabama and the chief elections officer of the state, sent a mailing with enclosures to five (5) subordinate employees in an attempt to influence the vote or political action of the said employees. The mailing included a letter that exhibited the following characteristics as evidence of Worley’s attempt to invoke her official authority or position:
“1. Two official seals of the state of Alabama incorporated in the letterhead.
“2. Personalization of each letter.
“3. Four references to ‘Secretary Of State.’
“4. The Statement 7 want to ask for your support and your vote.... ’ (emphasis in original)
“5. Reference to an enclosed envelope in which the victim could ‘volunteer, request a yard sign, etc.’
“6. Reference to an enclosed ‘Worley Secretary Of State’ campaign bumper sticker for the victim’s ‘vehicle’s bumper or rear window.’
“The State also expects to introduce evidence that the mailing did in fact include the referenced bumper sticker as well as a donation envelope. Further, the State expects to present evidence that Defendant Worley obtained the home addresses of some of the respective employees by virtue of her position as the chief executive in the Office Of Secretary Of State. Additionally, the State expects witnesses to testify that Worley, in her capacity of Secretary Of State told employees that she could find out if they voted and for whom they did vote.”
(C. 63-64.) (Footnotes omitted.)
The State’s written response to Worley’s motion to dismiss contains additional discussion of the letter and the specific areas of support Worley had suggested to the employees. The State concluded its argument in the written response as follows:
“Defendant Worley sought to have employees publicly display their support for her by soliciting her subordinates to ‘request a yard sign’ or attaching ‘the enclosed bumper sticker to your vehicle’s bumper or rear window.’ More importantly, she attempted to use her authority as supervisor, Secretary of State, and Chief Elections Officer to influence the vote of her subordinates. In so doing, she violated the rights of her employees to be free from political influence in the workplace and the right of *441 every citizen, including those who worked for her, to enjoy the services of the Secretary of State’s Office without political undercurrent, intimidation, or interference. She attempted to undermine the very fabric of our democracy while blatantly and feloniously ignoring the law and her oath as the Chief Elections Officer of the State.”
(C. 72.)
In its order dismissing the felony charges against Worley the trial court stated, “If the transgression is mailing the letter to a subordinate, and it is, the only law declaring such conduct illegal is the misdemeanor statute.” (C. 83.) The court further stated, “If the state is correct, then any incumbent candidate who mails such a letter, stating his office, to any citizen is guilty of a felony....” (C. 83.) The court overlooked a portion of the State’s proposed evidence, and that oversight resulted in the erroneous dismissal of the felony charges.
The State’s evidentiary proffer included more than the mailing; the State also intended to produce evidence that Worley had obtained the home addresses of some of the employees by virtue of her official position as Secretary of State, and the State expected to produce witnesses who would testify that Worley had told employees that, as Secretary of State, she could find out whether they had voted and for whom they had voted.[3] The trial court’s dismissal of the felony charges was, therefore, based on a consideration of only part of the State’s proffered evidence — the mailing. The trial court’s failure to consider the evidence proffered in addition to the mailing appeared to be vital to its decision to dismiss the felony charges, because the trial court repeatedly stated that the State was using the same evidence to charge Worley with both a misdemeanor and a felony. However, as demonstrated above, the State’s proffer included allegations in addition to the mailing and, as we will discuss in more detail below, those additional allegations were important to the establishment of the felony charges.
B. Statutory Interpretation
The Alabama Supreme Court also directed this Court to conduct “a substantive consideration of the questions of statutory interpretation that led the trial court to dismiss the felony charges.” Ex parte Worley, 102 So.3d at 434. The trial court held that, because the felony statute did not explicitly mention subordinate civil servants, that statute was more general than the misdemeanor statute that did refer to subordinate employees. Therefore, the trial court held, the mailing of the letter to subordinates was governed solely by the more specific misdemeanor statute. The court further stated: “If the state is cor *442 rect, then any incumbent candidate who mails such a letter, stating his office, to any citizen is guilty of a felony-” (C. 83.) The court also stated that it was unclear whether the same conduct can give rise to liability under both statutes. The court viewed the statutory provisions as “competing,” and appeared to conclude that both provisions limited the same types of actions or had identical “spheres of operation.” (C. 86.)
Whether the trial court’s dismissal of the felony charges was proper in light of the State’s proffered evidence depends on the meaning of the two statutes.
Section 17-l-7(b), Ala.Code 1975, at the time relevant to these charges, provided:
“No person shall attempt to use his or her official authority or position for the purpose of influencing the vote or political action of any person. Any person who violates this subsection (b) shall be guilty of a felony and punishable by a fíne not to exceed ten thousand dollars ($10,000) or imprisonment in the state penitentiary for a period not to exceed two years, or both.”[4]
Section 17-l-7(c), Ala.Code 1975, at the time relevant to these charges, provided, in relevant part:
“It shall be unlawful for any officer or employee to solicit any type of political campaign contributions from other employees who work for the officer or employee in a subordinate capacity. It shall also be unlawful for any officer or employee to coerce or attempt to coerce any subordinate employee to work in any capacity in any political campaign or cause. Any person who violates this section shall be guilty of the crime of trading in public office and upon conviction thereof, shall be fined or sentenced, or both, as provided by Section 13A-10-63.”[5]
We must determine the intended scope of each statute. To make this determination we examine each statute to discover whose actions the legislature, in enacting the statute, intended to limit, whom it intended to protect, and what actions it intended to prohibit.
We note, first, that the rules regarding statutory interpretation are well established, and they were recently summarized by this Court:
“It is well settled that ‘[w]ords used in the statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991). ‘[T]he first rule of statutory construction [is] that where the meaning of the plain language of the statute is clear, it must be construed according to its plain language.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). ‘Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial *443 construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 585 (Ala.2001).
“ ‘The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.’ Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (emphasis added). Although legislative intent ‘may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained,’ Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985), ‘[i]n construing [a] statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible.’ Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 283 (Ala.1991). ‘Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive,’ id., and ‘the court must give effect to the clear meaning of that language.’ Beavers v. County of Walker, 645 So.2d 1365, 1376-77 (Ala.1994).
“This fundamental rule of statutory construction applies to penal statutes. ‘Absent any indication to the contrary, the words [in a penal statute] must be given their ordinary and normal meaning.’ Walker v. State, 428 So.2d 139, 141 (Ala.Crim.App.1982). ‘ “Penal statutes are to reach no further in meaning than their words,”’ Ex parte Bertram, 884 So.2d 889, 891 (Ala.2003) (quoting Clements v. State, 370 So.2d 723, 725 (Ala.1979), overruled on other grounds by Beck v. State, 396 So.2d 645 (Ala.1980)), and ‘it is well established that criminal statutes should not be “extended by construction,” ’ Ex parte Evers, 434 So.2d 813, 817 (Ala.1983) (quoting Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
“In sum, ‘[i]f the language of [a] statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature [in the plain language of the statute] must be given effect.’ Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). ‘[0]nly if there is no rational way to interpret the words stated will we look beyond those words to determine legislative intent.’ DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998). “We should turn to extrinsic aids to determine the meaning of a piece of legislation only if we can draw no rational conclusion from a straightforward application of the terms of the statute.’ 729 So.2d at 277.
“In determining whether judicial construction is required, ‘[t]he language of the entire statute under review must be read together and the determination of any ambiguity must be made on the basis of the entire statute.’ Sheffield v. State, 708 So.2d 899, 907 (Ala.Crim.App.1997). ‘Because the meaning of statutory language depends on context, a statute is to be read as a whole.’ Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993). We must also bear in mind that ‘“[t]here is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’” Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997) (quoting 82 C.J.S. Statutes § 316 at pp. 551-52 (1953)).”
State v. Adams, 91 So.3d 724, 736 (Ala.Crim.App.2010).
*444 The Alabama Supreme Court stated in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998):
“It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.”
With the foregoing principles in mind, we now examine the statutes. The felony statute was enacted first, in 1978, by Act No. 819, Ala. Acts 1978, as § 17 — 1— 7(b). The misdemeanor statute was enacted in 1988 by Act No. 88-497, Ala. Acts 1983, as § 17-l-7(c). When the Alabama Legislature recodified these statutes as § 17-17-4 and § 17-17-5, respectively, the statutory provisions remained substantively unchanged. Therefore, the legislature clearly was aware of the provisions of both statutes when it recodified them, even though the statutes had been enacted five years apart, thus giving a reasonable indication that the Legislature intended the statutes to serve different purposes or, using the trial court’s terminology, to operate in different spheres. We will not presume that the Alabama Legislature enacted meaningless or redundant legislation when it enacted the misdemeanor statute. “It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law. See Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala.1981).” Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998).
1. Felony Statute
Before its recodification, the felony statute provided, in relevant part: “No person shall attempt to use his or her official authority or position for the purpose of influencing the vote or political action of any person.” The statute is clearly directed at a person who has “official authority or position”; the statute protects “any person,” not only subordinate employees; and the statute prohibits those with official authority from attempting to use their official authority to influence another person’s vote or political action.
Although the trial court stated that the statute was unclear about the conduct it proscribes, we note that Worley demonstrated at trial, and continues to demonstrate on appeal, that she understands the kinds of conduct the felony statute was intended to prohibit. Defense counsel stated at the hearing on the motion to dismiss that the statute “intended to prevent abuse of your office to gain votes.... ” (R. 34-35.) Worley provided the trial court with an example of the type of action prohibited by the felony statute:
“[The statute] says that you have to use your official authority or position.
“An example I would give is I am running for sheriff and I am the incumbent sheriff, and I say I will let your son out of jail if you will hold a fund raiser for me. That is what this statute — that is the felony.”
(R. 27.)
Worley provides the following examples in her brief on appeal of what she believes would constitute violations of the felony statute:
“The more reasonable interpretation [of the felony statute] is that a felony exists only where the official threatens to (or actually does) take or withhold some *445 official governmental action, in order to compel political support. Thus a prosecutor would commit a felony by promising to dismiss charges if the defendant put up campaign signs for him, or by threatening to charge someone if he did not make a campaign contribution. Similarly, a Secretary of State might conceivably commit a felony by refusing to register a corporation unless a campaign contribution was made. In those hypothetieals, the official truly would have used the particular governmental powers of the office, in a felonious way, to compel political support.”
(Worley’s brief, p. 28.)
We find no ambiguity in this statute, and the plain words of the statute provide that an official commits a felony when he or she attempts to use the particular governmental powers of his or her office to influence a person’s vote or political action. The State alleged in the trial court that Worley had violated the felony statute by soliciting votes from people who happened to be her employees and by stating that she could find out whether someone had voted and for whom they had voted — which would have required the use of the official powers of her office. The State also alleged that Worley had obtained addresses of employees by virtue of her position. These are precisely the types of misuse of official power the felony statute was intended to prohibit. Because the felony statute protects the vote or political action of “any person” from the improper use of official authority or position, it is irrelevant that the alleged victims under the felony statute in this case were Worley’s employees.
The solicitation letter Worley mailed also included statements informing the employee that he or she could choose to support another candidate and, Worley said, “[Y]ou have every right to make that decision without any problems from me,” and “I am enclosing an envelope on which you may volunteer, request a yard sign, etc.; however, you may also choose to destroy this envelope. You will be given the same professional respect you have previously been given if you choose the latter.” (C. 74.) Worley’s assurances that there would be no retribution for failing to support her candidacy implicitly acknowledge the latent power Worley held to exact retribution and acknowledge that “problems” might have arisen for an employee who did not support Worley through his or her vote or political action.
The concern about tacit political pressure in the workplace expressed by Congress when it enacted the Hatch Act in 1939 was noted by the United States Supreme Court in United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973):
“A related concern, and this remains as important as any other, was to further serve the goal that employment and advancement in the Government service not depend on political performance, and at the same time to make sure that Government employees would be free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs.”
413 U.S. at 566.
This concern remains a significant one for all employees in public service, and whatever the intended purpose of Worley’s statements regarding “problems” and treatment with “professional respect,” those statements also served as an acknowledgment by Worley that employees might fear retribution from Worley.
*446 We note, too, that the State argued in its written response to Worley’s motion to dismiss that it intended to present evidence indicating that Worley had obtained the home addresses of some of the employees by virtue of her position as Secretary of State. In response to the allegation, Worley offered a telephone book in the trial court that, she said, contained the names and addresses of each of the employees. Although not directly stated at trial, we understand the State’s argument to be that Worley used her official authority to obtain addresses of some employees, thus facilitating the mailing of the campaign letter seeking their votes, financial contributions, and additional actions furthering her campaign. Worley’s display of the telephone book in the trial court in response to the allegation was perhaps intended to challenge the truth of the allegation. However, the allegation itself properly charged a violation of the felony statute because it alleged a use of official power to influence a vote or political action. Although this portion of the State’s proffer was less clearly stated than the allegation related to the statement about the examination of voting records, this allegation nonetheless, too, charged a use of official authority or position for the purpose of influencing votes or political action. Therefore, that portion of the State’s proffer also supported the felony charges against Worley.
Finally, the State argued at trial and argues again on appeal that Worley’s conduct violated the felony statute because she invoked her authority or use of the “mantle of her authority” (State’s brief, p. 27) by identifying herself in the mailing as the secretary of state. The trial court rightfully expressed its concern about the State’s interpretation of this portion of the statute.[6] As we have discussed in detail above, and as Worley has consistently argued, the felony statute requires that an official attempt to use the official’s authority or position to influence another’s vote or political action. Merely identifying oneself as an incumbent or stating one’s current or previous official position does not constitute the use of the particular power specific to the holder of the office or official position. The statute requires more than merely stating one’s status as a person with official authority or position, or otherwise identifying oneself as being in that position.
The legislature defined the scope of the felony statute to prohibit one in a position of power or authority — an official — from attempting to use the power associated with that office or position to influence another’s vote or political action. It is not the province of this Court to question the propriety, wisdom, or expediency of that legislation, but only to interpret it and to consider in this case whether the proffered evidence supports felony charges. The plain words of the statute sufficiently delineate the crime. The State’s proffer of evidence alleging that Worley used the official position or the authority available to her in her position as secretary of state by locating employee addresses and stating to employees that she could discover private voter information contains sufficient support to sustain the felony charges against Worley.
2. Misdemeanor Statute
Before its recodiflcation, the misdemean- or statute provided, in relevant part:
*447 “It shall be unlawful for any officer or employee to solicit any type of political campaign contributions from other employees who work for the officer or employee in a subordinate capacity. It shall also be unlawful for any officer or employee to coerce or attempt to coerce any subordinate employee to work in any capacity in any political campaign or cause.”
§ 17-1-7(c), Ala.Code 1975.
The misdemeanor statute is directed at the actions of any officer or employee who has a subordinate employee; the statute protects the subordinate employee; the statute prohibits the officer or employee from soliciting political campaign contributions from a subordinate, and it prohibits the officer or employee from coercing a subordinate to work in any political campaign.[7] Violation of the misdemeanor statute by soliciting a contribution and coercing work in a political campaign can be accomplished by anyone with supervisory authority over a subordinate. Coercion can involve promises of rewards, for example, an increase in pay, time off, easier tasks at work; coercion can involve threats of retribution, for example, threats of an assignment to less desirable working conditions, an increase in workload, or exclusion from consideration for advancement. All these types of coercion, and the many other forms coercion might take, are simply related to the existence of the supervisor-subordinate relationship in the workplace; any supervisor, even a State official, can coerce a subordinate employee to work in a political campaign. For purposes of the misdemeanor statute, the coercion or solicitation need not be related to the use of the particular power or authority associated with one’s unique official position. That is a vital distinction between the felony and misdemeanor statutes.
3. Application of Statutes in Light of the Evidence Proffered by the State
Evidence the State proffered in the trial court involved Worley’s use of her official authority or position — and not simply her authority as a supervisor of subordinate employees — to influence employees’ votes and political action. Consideration of the complete proffer is as important to the resolution of this issue as is the consideration of the distinctions in scope of the statutes.
At the hearing in which the trial court considered Worley’s motion to dismiss, the trial court stated that it was concerned that the misdemeanor statute prohibited solicitation of contributions from employees and that the State had taken the same conduct, “that same letter,” and charged Worley with a felony. (R. 19.) The letter, itself, provided evidence supportive of the misdemeanor charges. The evidence proffered by the State to the trial court included allegations in addition to the letter, and those allegations involved the use of official authority beyond the power available to any supervisor, and the use of official authority particularly related to the powers available to the secretary of state, as discussed above. Therefore, the State was not relying on the same evidence to prove both the felony and the misdemeanor charges.
Moreover, the trial court viewed the felony statute as a broader, more general statute, and the misdemeanor statute as a specific one governing all of Worley’s campaign-related actions with regard to her employees; the more specific, misdemean- or statute must control, the trial court determined. The court stated that be *448 cause campaign-related prohibitions are explicitly set out in the misdemeanor statute, Worley was presumed to be permitted to engage in other activities not prohibited by the specific statute. (C. 84.) As discussed in detail above, however, the felony statute is not a more general version of the misdemeanor statute. Rather, the two statutes protect two different groups of people; the two statutes prohibit different actions; and the two statutes limit the actions of two different groups of people. When the plain language of the statutes is considered, it is clear that they are not in pari materia — that is — they do not govern the same subject matter; the felony statute is not more general; and the two statutes are not in conflict. The rule of statutory construction that the more specific statute governs the more general statute, see, e.g., Ex parte Coffee County Comm’n, 583 So.2d 985 (Ala.1991), need not be applied here and, in fact, it cannot be, because the statutes do not have the same purposes or scope. Therefore, the trial court’s determination that the State could file charges only under the misdemeanor statute because that statute was more specific and controlled all of Worley’s campaign-related actions with regard to her employees was incorrect. The trial court’s interpretation would essentially permit Worley or any other official to use his or her official authority or influence to commit conduct determined by the Alabama Legislature to be egregious enough to support a felony conviction, while insulating the official from a felony charge when the conduct is committed against a subordinate employee. This construction does not comport with the plain meaning of the statutes, and it would lead to the absurd result of affording less protection to Worley’s employees from Worley’s use of her official power or influence than the protection afforded any other person in the State.
4. Constitutionality of the Felony Statute
The trial court stated:
“Finally, if statutory construction alone does not resolve the confusion as to the spheres of operation for the competing subsections, this Court would hold that the [felony] statute violates federal and state constitutional directives. What conduct constitutes using ‘official authority or position for the purpose of influencing the vote or political action of any person ... ?’ If Worley had sent the letter to anyone other than her staff, she would never be prosecuted. Her letter is typical of letters sent by all office seekers. Yet, she is indicted for a felony because she sent it to her staff, even though the felony statute does not mention subordinates or employees.
“Under the State’s theory, any office holder who mails a solicitation letter, identifying his or her office, is guilty of a felony even if sent on campaign letterhead. If that be the case, court dockets will be filling up with current and former politicians. The State’s interpretation demonstrates the harm lurking in § 17-l-7(b) — it is so vague that a prosecutor can pick and choose the conduct he wishes to indict.”
(C. 86.)
The Alabama Supreme Court has discussed the principles applicable to a challenge to the constitutionality of a statute, noting first that review of a challenge is de novo. State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006). The Court stated:
“[A]cts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby *449 County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) (‘In reviewing the constitutionality of a legislative act, this Court will sustain the act “ ‘unless it is clear beyond reasonable doubt that it is violative of the fundamental law.’ ” ’ White v. Reynolds Metals Co., 558 So.2d 873, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944))). We approach the question of the constitutionality of a legislative act ‘ “ ‘with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.’ ” ’ Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
“Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act ... bears the burden ‘to show that [the Act] is not constitutional.’ Board of Trustees of Employees’ Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (‘It is the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality.... ’).”
955 So.2d at 1017.
Principles of due process guaranteed by the Fifth Amendment to the Constitution of the United States underlie the void-for-vagueness doctrine. “A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).
“The judicial power to declare a statute void for vagueness ‘should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.’ Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962).”
Vaughn v. State, 880 So.2d 1178, 1195-96 (Ala.Crim.App.2003).
In his special concurrence in State v. Worley, former Justice Harwood, sitting as a Special Judge, addressed the trial court’s determination that the felony statute was unconstitutionally vague:
“As part of its effort to construe § 17 — 1—7(b), the trial court queried in its written order: ‘What conduct constitutes using “official authority or position for the purpose of influencing the vote or political action of any person ... ”?’ Before this court, the parties have answered that question, so as to agree on a standard that provides a ‘reasonable construction’ for determining the level of conduct that § 17-1-7(b) criminalizes. In her principal brief, Worley asserts that ‘the felony statute only prohibits the use of threats of harm or promises of reward in order to force political support.’ (Worley’s brief, p. 9.) She asserts that ‘[t]he Attorney General has repeatedly given official opinions supporting this view of the statute.’ (Worley’s brief, p. 9.) Thereafter, she declares sequentially that the ‘more reasonable interpretation’ is that a felony exists under § 17-l-7(b) ‘only where the official threatens to (or actually does) take or withhold some official *450 government action, in order to compel political support’ (Worley’s brief, p. 28); that § 17-l-7(b) applies ‘only to officials who use the uniquely governmental powers of their offices in order to offer rewards for supporting them or to threaten harm for a lack of support’ (Worley’s brief, p. 30); that ‘official opinions of the Attorney General recognize that § 17-1-7 prohibits only threats of retaliation and promises of rewards [and] does not prohibit officials from doing things that are not threats or promises’ (Worley’s brief, p. 32); that ‘[n]o part of the statute applies without a promise of reward or threat of reprisal’ (Worley’s brief, p. 34); and that the prohibition in § 17-l-7(b) against ‘influencing the vote’ of someone ‘exists only when there is a threat of harm or promise of reward in return for the vote’ (Worley’s brief, p. 44).
“The attorney general concurs with Worley in his reply brief, stating that ‘[t]his Office correctly interpreted the statute as directed toward “officials trying to put undue influence on persons under their control by offering a reward or threat of reprisal for voting in a certain way.” ’ (State’s reply brief, pp. 18-19.)
“Thus construed, § 17-l-7(b) is not vague as applied to Worley’s alleged conduct.”
State v. Worley, 102 So.3d at 424-25 (Harwood, Special Judge, concurring specially).
We adopt the reasoning and conclusion of that portion of Special Judge Harwood’s opinion. Whatever the outermost boundaries of the felony statute might be, the conduct alleged here falls within the margins of the prohibitions of the statute.
5. Conclusion
The trial court’s failure to consider all of the evidence proffered by the State, combined with its incorrect interpretation of the two statutes, led to the erroneous dismissal of the felony charges against Wor-ley. The trial court’s judgment is due to be reversed, and the cause remanded for further proceedings.
REVERSED AND REMANDED.
KELLUM, BURKE, and JOINER, JJ., concur. WINDOM, J., recuses herself.

. Worley was elected Secretary of State in November 2002, and she was defeated in the November 2006 general election. This Court may take judicial notice of election results. See Homan v. Beard, 268 Ala. 22, 104 So.2d 914(1958).

. Section 17-l-8(a), Ala.Code 1975, the section in effect when Worley allegedly committed the acts relevant to this criminal proceeding provided, in pertinent part, that the secretary of state is the chief elections official in the State. Section 17-l-8(a) was substantively unchanged but was recodified as § 17-l-3(a), Ala.Code 1975, by Act. No. 2006-570, Ala. Acts 2006.

. We are aware that the trial court inquired during one of the hearings whether the case involved only the mailing, and the prosecutor stated that it did. (R. 13-14.) Worley relies on this portion of the record to show that the State has always maintained that only the mailing was at issue here. However, the trial court’s inquiry and the prosecutor's answer came during a discussion of the State’s motion in limine and not during a discussion of the motion to dismiss. We note, too, that later in the hearing, when the parties presented arguments about the motion to dismiss, the State specifically drew the trial court's attention to the protection in the felony statute against the improper influence of not only one’s political action, but also one’s vote. The State argued: "It is very conceivable to me that the legislature saw fit to value a vote more than it did a financial contribution and placed more protection on the vote and the free speech of someone to exercise their political rights.” (R. 35-36.) Moreover, the allegations of the use of Worley’s official capacity to influence the employees’ votes and political action were clearly made in the State’s written response to Worley’s motion to dismiss. (C. 64, 70-72.)

. The Alabama Legislature recodified § 17 — 1— 7(b) as § 17-17-4, Ala.Code 1975, see Act No. 2006-570, Ala. Acts 2006, effective January 1, 2007. That statute now provides: "Any person who attempts to use his or her official authority or position for the purpose of influencing the vote or political action of any person shall be guilty, upon conviction, of a Class C felony.”

. In Act. No. 2006-570, Ala. Acts 2006, effective January 1, 2007, the Alabama Legislature recodified § 17 — 1—7(c) as § 17-17-5, Ala. Code 1975. The language of that statute was not changed.

. "Under the State's theory, any office holder who mails a solicitation letter, identifying his or her office, is guilty of a felony even if sent on campaign letterhead. If that be the case, court dockets will be filling up with current and former politicians.” (C. 86.); and "Telling a politician that they can’t influence someone's vote is like telling most people they can’t go out and breathe. I don’t know how you separate the two.” (R. 36.)

. No issues regarding the sufficiency of misdemeanor charges are before us.